HARVEY MANGAM, jun., by his guardian, *vs.* THE BROOK-
LYN CITY RAIL ROAD COMPANY.

No matter how gross or evident the negligence of the driver of a vehicle, if
another, by his own negligence, exposes himself to injury from the vehicle,
he has no remedy.

Knowingly to allow a child of less than four years of age to go at large in a
public street, without a protector, is such negligence in his parents or
guardians as will, if unexplained, prevent a recovery by him for a personal
injury.

The fact that a young child, who has parents or other guardians and protect-
ors, is found alone and unwatched in the street, is presumptive evidence
that he was so exposed voluntarily or negligently by his protectors, and that
their negligence thus contributed to his injury.

But the fact that the child is in the street alone, or in the way of a vehicle
alone, is not conclusive that he is there by the negligence of his protectors.
It is a fact which admits of explanation, and notwithstanding which the
question of negligence is open to inquiry.

If the child has parents living, and he is under their charge and protection, he
is responsible for their acts and omissions, as if they were his own; and for
the purposes of an action by him for personal injuries, their negligence must
be regarded as his negligence.

Although want of care cannot be imputed to a child, for not avoiding a pass-
ing vehicle, it may be charged upon those who have the charge of the
child, if they suffer him to go, unprotected, where vehicles are passing, and
where care and forethought must be required, beyond what he is capable
of exercising.

The question is whether the protector exerted due care and diligence to pre-
vent the child from going where it would necessarily be in danger; and
hat question should be left to the jury.

MOTION for a new trial, on a case and exceptions, directed
by the court to be heard, in the first instance, at the
general term.   The action was brought to recover damages
for injuries sustained by the plaintiff in consequence of being
run over by a passenger car upon the defendants' road.   He
was three years and seven months old, at the time.   The de-
fense was that the injury was caused by the negligence of the
plaintiff himself, and not by the negligence or fault of the
defendants, or their agents or servants.   It was proved that
the plaintiff was knocked down and run over by the car, and

one of his legs so injured that it required to be and was sub-
sequently amputated. At the close of the plaintiff's evidence
the court, on the motion of the defendants, ordered the com-
plaint to be dismissed.

*J. M. Van Cott*, for the plaintiff. I. The injury resulted
from *very gross negligence* on the part of the defendants.
For all purposes of practical utility, the car, at the time of
the occurrence of the injury, had no driver, and the plaintiff
is entitled to have the case, as to all the points presented by
it, considered as if the defendants had sent their car through
the crowded streets of a city *without a driver*. (33 *Barb.*
503, 507.)

II. The negligence was so grossly culpable as that if it had
caused injury to a passenger riding in the car gratuitously,
or even under a special contract exempting the carriers from
liability for accidents from negligence, the defendants would,
notwithstanding those circumstances, have been responsible
for the damage. (*Bissell* v. *N. Y. Cent. R. R. Co.*, 29 *Barb.*
602. *Nolton* v. *Western R. R. Co.*, 15 *N. Y. Rep.* 444.)

III. It is plain that the injury was caused by this absence
of any *acting driver*, and that if there had been one, paying
*even very slight* attention to his duty, it would not have
happened.

IV. Where an injury to a child of tender years, unattended
in a public street or highway, is caused by *gross and culpa-
ble negligence*, the wrongdoer is responsible, though the child
be entirely helpless and unfit to be in the street alone.
(*Hartfield* v. *Roper*, 21 *Wend.* 615 ; *opinion of Cowen, J.*,
619. *Lynch* v. *Nurdin*, 1 *Ad. & Ell. N. S.* [*Q. B. R.*] 29.
*Illidge* v. *Goodwin*, 5 *Car. & P.* 190. *Bird* v. *Holbrook*,
4 *Bing.* 628.)

V. The act of sending a rail road car, unguided by a dri-
ver, through the crowded streets of a city, is one so immi-
nently dangerous, and so grossly culpable, as that one guilty
of it is *prima facie* liable for all injuries the car may cause in

its progress, whether to an infant or an adult, a strong, alert and vigorous person, or a feeble, helpless or disabled one. If the plaintiff had been an adult, and the injury to him had occurred under the precise circumstances otherwise of the case at bar, the evidence of such circumstances would have entitled him to a verdict. At all events, had the defendants claimed exemption from liability upon the ground that the plaintiff commenced crossing the track when too near the approaching car, and was thereby guilty of negligence contributing to the injury, there could have been no nonsuit on that ground; at most, the defendants would have been entitled to a submission to the jury of the question whether the plaintiff had been guilty of negligence which did in fact contribute to the injury, accompanied by an instruction to the jury that a passenger, crossing the track of a horse rail road in the vicinity of an approaching car, has a right to assume that the car is under the guidance of a driver, and that the prudence and justifiableness of his act in crossing, is to be judged with reference to that consideration. (*Johnson* v. *Hud. Riv. R. R. Co.*, 6 *Smith*, 20 *N. Y. Rep.* 65. *Brown* v. *N. Y. Cent. R. R. Co.*, 31 *Barb.* 385. *Oldfield* v. *N. Y. and Harlem R. R. Co.*, 4 *Kern.* [14 *N. Y. Rep.*] 310.)

VI. There is certainly no rule of law exempting the defendants from liability for an injury to the plaintiff, caused by their gross negligence, by reason of his being a child of tender years, alone in a public street, where they would have been liable for an injury to an adult occurring under like circumstances. Such a rule would be repugnant to the clear principles of law and justice, and would shock the moral sense. If the injury had been caused by a careless discharge of fire arms, or by a ferocious dog or wild animal running at large, or by an ill built wall falling into the street, or by an unlighted trench being left open at night, or by an unrepaired bridge falling in, the wrongdoer would have been liable *irrespective of the age of the plaintiff.* Aged, infirm, deaf, even blind persons, are entitled to the use of the public streets ;

and in crowded cities, children of a tender age are of neces-sity obliged to go into the streets, and are entitled to pro-tection. The most that can be claimed adversely is, that when a loss of sight or hearing, or the feebleness of extreme age, or extreme youth, peculiarly exposes 'the passenger to danger, it shall be left to the jury whether it was a proximate and concurring cause of the injury. In such a case, the fault imputed to the plaintiff being in respect of his natural capa-city, the onus is upon the defendant to show it to be so con-nected with the injurious act as to excuse it, and in that view, though a wrongdoer might be excused as to an infant plaintiff by whatever would excuse him as to an adult, he could be excused by no less. (*Lehman* v. *City of Brooklyn*, 29 *Barb.* 234. *Hartfield* v. *Roper*, 21 *Wend.* 615. *Old-field* v. *N. Y. and Harlem R. R. Co.*, 4 *Kernan*, [14 *N. Y. Rep.*] 310.)

VII. The cases which hold a child of tender years who sus-tains an injury, while alone and unattended in a public street or highway, chargeable as for negligence in being so alone and unattended, put it upon the ground that it is the negligence of his parents or guardians in permitting him to be in such a position, and it is upon that distinct ground that he is held chargeable with the consequences of personal negligence. But in the case at bar there was no negligence of the parents or guardians. The child was kept in his father's house. Within half an hour of the occurrence he was on the rear balcony. There was no opening in the rear of the house, and there were houses on each side. The front doors, both of the basement and front hall, were locked. There was an open window in the basement about four feet above the floor, and it must have been by climbing up from the floor and getting out of this window that the child got into the street. These circumstances show that there was no negligence of the pa-rents or natural guardians, and the sole ground on which negligence is imputed to the plaintiff in this class of cases wholly fails in this case. (*Hartfield* v. *Roper*, *supra*.)

VIII. The plaintiff was not a mere helpless infant. He was nearly four years of age at the time of the occurrence. From the manner in which he got out of the house into the street, it would appear that he possessed no small amount of bodily activity. The law certainly has no absolute standard for determining the age of childhood at which one can go alone in the street without the imputation of negligence in that regard. The proper age varies very widely in different individuals, and the question of this plaintiff's age and capacity, under all the circumstances, was one of fact for the jury.

IX. Grounds of public policy do not favor the shielding of the defendants from responsibility in this case, but the reverse. The act of permitting this car to go through the streets unguided, was one so wreckless and so imminently dangerous to the public safety, that it should receive no countenance or excuse.

*G. T. Jenks,* for the defendants. I. The complaint was properly dismissed, because, conceding all the facts proved which the plaintiff claimed to exist, and that negligence of the defendants was thus shown, the plaintiff was nevertheless guilty of negligence, concurring with the defendants' negligence to produce the injury, and cannot therefore sustain this action. It was negligence of the plaintiff to be in the street of a city, at his age, unattended. The care of an infant is, and should be, confided to a person of discretion. An infant should not go into the street of a city unattended by a person of discretion. He is, therefore, in the absence of such an attendant, responsible for the exercise of all the care which such an attendant would be bound to exercise if he were present and watching over the infant. If, therefore, an adult in the place of the infant could, with the exercise of proper care, have avoided the car which caused the injury received by the plaintiff, then the plaintiff was negligent in not avoiding the car. And negligence, on undisputed facts,

is a question of law. (*Hartfield* v. *Roper*, 21 *Wend.* 615. *Brown* v. *Maxwell*, 6 *Hill*, 592. *Kreig* v. *Wells*, 1 *E. D. Smith's Rep.* 74. *Underhill* v. *New York and Harlem R. R. Co.*, 21 *Barb.* 489.)

II. And if the plaintiff was not free from negligence, the defendants are not liable even for *gross negligence* producing the injury. The principle upon which the negligent plaintiff is not allowed to recover of the negligent defendant is, that the law will not measure the liabilities of wrongdoers, and decide how much blame belongs to one or to the other party. The law and the court cannot adjust the balance. If this be the ground of the rule, it is difficult to perceive how it can be avoided by showing a degree of negligence greater on the part of one party than on the part of the other— on the one side negligence, on the other *gross* negligence. The difficulty of adjusting the weight of responsibility still remains. And the distinction intimated by Bronson, J. in the case of *Brownell* v. *Flagler* (5 *Hill*, 282) excludes the negligent plaintiff from recovering against the defendant who has been guilty of gross negligence. The learned judge says, that "Where the injury of which the plaintiff complains has resulted from the negligence of both parties, without any *intentional* wrong on the part of the defendant, the action cannot be entertained." When the driver intentionally drives over a child in the street he is guilty of something worse than negligence, and the question is no longer one of negligence. But the learned judge, it is conceived, meant by the distinction to exclude all *degrees* of negligence from consideration in determining the question, when he made the defendants' liability to a negligent plaintiff depend upon a positive act—an intention—and not upon the absence of attention, which in this class of cases constitutes negligence. (*Johnson* v. *Hudson River R. R. Co.*, 20 *N. Y. Rep.* 65.)

III. In this case the defendants' agent was not guilty of *gross negligence*. The car was on a level grade. The horses were going at the ordinary rate. It was impossible, too, for

the car to be swerved from its iron tracks, which conducted its motion in a direct line. And it was fair to presume that any person fit to be in the streets could, with ordinary and reasonable care, avoid such a vehicle—the rate of speed of which was observable, and the line of its progress determined and fixed.

*By the Court,* EMOTT, J. The plaintiff was run over by a car of the defendants in July, 1858, at the corner of North Tenth and First streets in Williamsburgh, and very severely injured, and this action is brought for damages for this injury. It is conceded that the defendants' driver, who had the control of the car, was guilty of negligence. He was sitting at the time upon the railing of the platform of his car, his face turned away from the horses or mules, and from the direction in which the car was going. His attention was absorbed by a bird which he had in his hands, while the reins of his animals were twisted about the brake of the car. The car was drawn by mules, and was proceeding at a steady though not a rapid pace. It is not using too strong language to say that this was gross negligence on the part of the driver of such a vehicle. It was in effect to leave the vehicle moving uncontrolled through the public streets—a vehicle which is in some respects more dangerous to other passengers on foot or in carriages than any ordinary carriage. If the danger of a collision with a rail road car is not greater, the consequences of such a collision, when it does occur, are far more serious and less easily prevented than in the case of common vehicles.

The plaintiff was coming down North Tenth street as the car was coming along First street, and in attempting to cross the track in advance of the car, he was struck by some projecting portion of the car, thrown down and run over by both wheels. At what distance from the crossing of the two streets the car was when the plaintiff set out to cross First street, does not perhaps very distinctly appear. One witness

Mangam *v.* Brooklyn City R. R. Company.

says, that when the plaintiff was four or five feet from the corner of the streets, the car was half a block off; and another, that he first saw the plaintiff ten or fifteen feet from the car. In an ordinary case the question would occur, in this stage of the cause, whether the plaintiff was careless of his safety in attempting to cross the street before the car should have passed: that is, whether a person of ordinary prudence, attentive to the circumstances, would have seen that it would be dangerous to attempt to cross the street before the car, or whether there was in point of fact sufficient time to have crossed, with ordinary exertions and no misadventure on the part of the passenger, and ordinary care in the driver of the car. No doubt if the car was so near when the plaintiff set out to cross the street that it was rash and hazardous to attempt to do so, then, in an ordinary case, possessing no other features, the negligence of the person injured would deprive him of any redress for his injury, notwithstanding the misconduct of the person entrusted with the car. No matter how gross or evident the negligence of the driver of a vehicle, if another by his own negligence exposes himself to injury from the vehicle, he has no remedy. If, however, no other considerations but these had entered into this case, I apprehend the learned judge who presided at the trial would not have felt himself called upon to withhold the case from the jury. The question of negligence in such actions is undoubtedly a question of law, upon an admitted or an unquestioned state of facts. But whether, in a given case, the distance between an approaching vehicle and a passenger in a street, or the circumstances of either, are such that a particular movement might be prudently undertaken, and could, and but for misconduct would, probably have been effected without collision or injury, is often a mixed question of distances, conditions, the ability of the person, and the speed and movement of the vehicle, which must be left to a jury with proper instructions.

This, however, is not the point upon which the present

case turns. There is a fact in the case which is yet to be mentioned, that renders the questions which have now been referred to comparatively if not wholly immaterial. The plaintiff was an infant of tender years; at the time of this occurrence he was a child of less than four years of age. He was therefore necessarily incapable of exercising forethought or discretion, or of anticipating or protecting himself against the dangers to which he would be exposed in the thorough-fares of a great city. Because he was incapable of discretion, however, he was not therefore above all law. The plaintiff had parents living, and he was under their charge and protection. The law makes him responsible for their acts and omissions as if they were his own, because this is the only way in which the rule of mutual care and responsi-bility between persons using the highway can be enforced, in such cases. Their negligence must be regarded as his negli-gence, for the purposes of this action. Although want of care cannot be imputed to a child for not avoiding a passing vehicle, it may be charged upon those who have the charge of the child, if they suffer him to go, unprotected, where vehicles are passing, and where care and forethought must be required, beyond what he is capable of exercising. The rule and its reason remain the same, but its application is modified, or directed to another part of the case. I am not, however, prepared to admit the converse of the proposition to which I referred a moment ago. The defendants in such a case as this are not above all law, any more than the plain-tiff, because he was of tender years and incapable personally of care and forethought. Their servant was guilty of griev-ous negligence, and they are liable for the consequences to the plaintiff, unless those for whose conduct the plaintiff is responsible were also guilty of negligence which contributed to the result. To allow a child of such tender years to go at large in a public street, without a protector, would unques-tionably be such negligence in his parents or guardians. Such was the state of facts in *Hartfield* v. *Roper*, (21 *Wend.*

Mangam v. Brooklyn City R. R. Company.

615,) which is and deserves to be a leading case, for the very able opinion of Judge Cowen. Such was the rule approved by us in *Lehman* v. *The City of Brooklyn,* (29 *Barb.* 234.) So also the fact that a young child who has parents or other guardians and protectors, is found alone and unwatched in the street, is presumptive evidence that he was so exposed voluntarily or negligently by his protectors, and that their negligence thus contributed to his injury. But the fact that the child is in the street alone, or in the way of a vehicle alone, is not conclusive that he is there by the negligence of those for whose care the law holds him responsible. It is a fact which admits of explanation, and notwithstanding which the question of negligence is open to inquiry. A child may be in the street in the immediate charge of a competent person, and it may escape from that charge, and fall into danger and disaster. Or it may be suitably guarded and restrained from going into the street, and yet it may elude its restraints, and be in the way of danger or destruction before its protectors are aware of it. The question then is, whether these protectors exerted due care and diligence to prevent the child from going where it would necessarily be in danger. It is a similar question to that which occurs in the case of an adult, when he must prove that he neglected no precaution and exercised due forethought to avoid such dangers; except that the care and watchfulness are required at an earlier stage of the occurrence, and the inquiry goes farther back in the chain of causes which lead to the result.

My learned associate before whom this cause was tried granted a nonsuit, on the ground that the presence of such a child alone in the street, was of itself such an act of negligence, or such evidence of negligence, in his parents, that he could not recover for the injury which befell him. I agree that, unexplained, it would be so. But the question is, whether this child was in the street by the consent or through the neglect of his parents, or in spite of their precautions; and whether those precautions were sufficient to answer the

demands of prudence and consideration. The child was at home at his father's house in First street, three doors from the corner of North Tenth street, through which latter street the rail road passes. His mother and a step-sister were in the basement hall washing, and the child was playing in the basement under their observation. The street door was closed and locked, and the child was not left alone during the afternoon, except at about twenty minutes before four, when one or both the women went into the yard to hang up clothes to dry. One of these women testifies, that at that time she saw the boy on a balcony in the rear of the house with his brother. When she returned to the room or the hall, he had probably escaped through one of the front basement windows, although she was not aware of it. In a very few minutes he was brought home, with his leg crushed by the car wheel; for another witness who saw the occurrence says that it happened before four o'clock. It is exceedingly probable that the child, after getting out of the window, ran directly down the street, and at once encountered the car at the corner. The sister of the plaintiff states that she never knew the child to go or be out alone in the street. The window through which he got out was open, and was about four feet from the floor. I think we can see, that in the circumstances of such a family as this appears to be, it would be impossible to provide a child of this age with a constant companion—one who should be every instant at hand. The support of a family is no less a duty of the parents than its protection, and for this all who can labor must be constantly occupied with their daily tasks. The law cannot exact more than nature dictates; nor can I say that the act of leaving a child of three years of age alone for a few minutes in the house while the door was closed, although a window was open, because its mother or sister were called into another part of the premises, in the discharge of their household duties, was of itself an act of negligence. Was it then a want of ordinary care to leave a window four feet from the floor open, through

Mangam *v.* Brooklyn City R. R. Company.

which the child might escape by climbing to it and out of it? The degree of care demanded of the parents of a child, under such circumstances, is the same which is exacted of a person of discretion in the protection of himself. It is ordinary care, the apprehension of, and the provision against, ordinary occurrences and risks. The question is, whether the person in charge of the child, leaving it in the room, or upon the balcony in the rear of the house, where it was last seen and whence it must have returned to the room, was bound to foresee that the child might or would clamber out of the window, and therefore to fasten it. To justify this nonsuit we must assume that this was so, and that a jury could not even have been permitted to find otherwise, or we must assume that the women were negligent in not pursuing the child into the street, which implies that he was there so long that they ought to have known it, and that they could have overtaken him, and thus prevented the calamity which ensued.

I am not prepared to decide these questions as matter of law, or to lay down as a rule or proposition expressly, that the parents of this child did not exercise ordinary care in watching it, and preventing its getting into the street where it would be in danger. It certainly was not in the street by their consent or permission, and although a perfect restraint, an absolute fastening of every access to the street, would of course have confined it to the house, it cannot be that ordinary care in the case of a child of this age demands so complete an imprisonment. I cannot say that these parents should be held guilty of a moral wrong in neglecting their child when he found his way out of the house, and therefore responsible, morally at least, for the painful consequences, as they must be if they were guilty of such negligence as removes the ground of this action. Such consequences were possible, but I cannot say they were probable, from what they did or what they omitted, and it is only for a neglect of probable consequences that they are responsible. The

question of their negligence ought, at least, in my opinion, to have been left to the jury. It involves various considerations and inferences, and it is not so clear that I am prepared to decide it as a question of law against the plaintiff. I am not to be understood of course as saying, on the other hand, that I consider it the duty of the court to have decided this question expressly in favor of the plaintiff. It is sufficient that there is a question, of mingled fact and inference, and not purely of law, and therefore a question for a jury, under proper instructions.

I am of opinion that this nonsuit should be set aside and a new trial ordered; and in this opinion, upon consideration, my brethren concur.

[KINGS GENERAL TERM, February 10, 1862. *Emott, Brown* and *Scrugham,* Justices.]