McCunn, J.
The testimony on the part of the plaintiff establishes the fact that the collision occurred about two o’clock on the morning of Nov. 14, 1865 ; that the night was a clear, starlight night; that there was no wind, and that for several miles just preceding the collision the sloop was allowed by the captain to drift with the current over safe anchoring ground, and where she would have been out of the beaten track of other vessels; that the defendants’ steamer at the time of the accident was heading up stream, in the usual channel, against a swift current, with a heavy tow of barges and boats in charge; that she had all her lights properly set, and that they were of such magnitude and clearness that they were seen by the crew of the sloop at the distance of *96 miles; that there was no wind, and that the sloop’s company had to row her to get her head down stream, in order to enable her, I suppose, to drift with the current; that there were no vessels in sight except the lights of the defendants’ steamer and the lights of her tow; that there was no wind to steer by, and that she (the sloop) was heading south by east near the middle of the channel; that when the steamer got within one hundred yards of the sloop a slight breeze sprung up, but not enough to move the vessel or steer by—it only sufficed to jibe the boom over to the eastward.
Now all this evidence, as I have said before, is offered on the part of the plaintiff, thereby establishing beyond a peradventure the fact that the sloop was allowed to drift with the current for miles and miles, in the midst, nay in mid-channel, of one of the greatest inland navigable thoroiighfares in the world.
So that the first and principal question that presents itself in this ease, is whether the plaintiff, under the circumstances, is free from blame, or free enough from contributing negligence to entitle him to recover.
I think, upon a careful consideration of all the facts and circumstances of the case, that he is not.
Before the plaintiff can recover in this case, he must establish the fact that he has suffered damage by the negligence of the defendants ; and second, that he did not by any act of negligence contribute to the act or damage.
It is immaterial whether the negligence of the plaintiff be slight or gross. The rule now is, that if the plaintiff by even slight negligence contributes to his injury he cannot recover.
This was the principle laid down in Neal v. Gilbert (23 Cow., 437), Judge Sandford holding that for any thing the court can see, although the defendant’s negligence was gross, yet the plaintiff’s exercise of reasonable care would have saved him from the consequences. Precisely this ease: if this captain—I mean the captain of the sloop—had exercised ordinary care, this accident would not have happened. Again, Baron Alderson holds, in Blyth v. Bingham (36 Eng. Law and Equity), that negligence con *97 sists in either omitting to do what a reasonable man would do, or the doing something that a reasonable man would not do, in either case causing mischief to a third person.
To enable a party to recover for negligence, there must be clear proof on his part of due care at the time of the accident happening. Hence in such a case as this the burden of proof is with the plaintiff, not only to show negligence on the part of the defendants, but to establish beyond a doubt, in the mind of the court, ordinary care upon his own part. This was the clear and reasonable doctrine laid down in the cases of Drew v. The Chesapeake (2 Douglass), and Burrell v. Williamson (1 McLean).
A sailing vessel has no right to neglect the proper caution, and throw the entire responsibility of accidents upon steamers. Vessels propelled with canvas, must exercise proper care and caution as well as vessels driven by steam; and this principle was strictly applied in the case of Ward v. Armstrong (11 Illinois).
In all such cases as the one under discussion, the test of defendants’ liability is to be found in a great measure by the inquiry, Could the injury have been avoided by the exercise of ordinary care on the part of plaintiff ?
If it could, he must then bear the loss himself.
This simple and plain rule of law was discussed and relied upon in the case of Wild v. the Hudson R. R.R. Co. (24 N. Y.) and in the case of Mangan v. The Brooklyn City R.R. (36 Barb., 230).
These and many other cases in the books establish the doctrine that no matter how negligent a defendant may be, yet, if a plaintiff unduly expose himself to injury he cannot recover, and the doctrine must apply to navigable rivers, or wherever the remedy afforded by the common law is invoked, whether the accident arose on land or water. How, applying this rule in this case, could the accident have been avoided by ordinary care on the part of the plaintiff ? If it could, he must fail.
I think it could. It was negligence to allow the sloop to drift down a river thickly covered with all kinds of vessels, in the dead hour of night, without the slightest power to control or manage her, because it is evident to the commonest mind that a *98 vessel drifting with the current has no steerage power; that is to say, it is motion through the water that gives power to the rudder by friction thereon, and then the power of the rudder guides the ship on her course. Without this movement through the water the vessel is entirely helpless.
The rudder of a ship is to a vessel what the reins are to a horse in a vehicle—the lines guide the horse, and the rudder passing through the current guides the ship. If the reins of the horse are dropped upon his neck, and he be allowed to move at random in a great thoroughfare, surely, if injury is done him, his master cannot recover; so, if the master of a ship allow his vessel to drift with the current without any steerage way, and an accident happen, surely this rule ought to be as strictly applied as in the case of the horse.
The steamer had a large number of other vessels in charge and attached to her ; she had to guide them as well as herself up a swift and turbulent stream; and long before the collision took place, if the captain of the sloop had exercised the most ordinary kind of care, seeing the manner his ship was drifting, and knowing her to be perfectly helpless and unmanageable without steerage way, and seeing the steamer’s lights approaching miles off, he should have selected a safe anchorage and brought his vessel to. His not doing so was gross negligence. Instead of the captain of the sloop exercising proper diligence to keep his ship out of harm’s way, he says that when he first saw the steamer’s lights, and the lights of her tow, he did not pay much attention to them, that he thought it was a large steamer coming up the river. This was negligence.
He should have scanned the lights on their approach, found out the steamer’s course and the true condition of things, and, seeing it was a steamer with a great responsibility attached, should have kept out of the way. Had the sloop been at anchor, she would have secured herself from the possibility of danger, as there is no evidence that the Camelia changed her course; and it would be against all principle, and against authority, to allow a vessel rendered helpless from any reason to drift down a *99 thickly navigated river for hours upon a strong ebb tide (when she can anchor any moment), and in such a manner, and, in case of loss, claim damage.
The law requires from those in charge of vessels upon the water constant care and vigilance.
Had the sloop been at anchor with fixed lights up, I have no doubt the steamer would have approached her with caution, and,, seeing from her lights that she was at anchor, would have avoided her. It will be seen that I have been viewing the question of negligence on the part of plaintiff in this case from a standpoint on the plaintiff’s side—that is to say, I have examined the question of negligence thus far on plaintiff’s own proof. How let us see if the proof on the part of defendants shows any negligence on the part of plaintiff. The testimony of the captain of the sloop is that the sloop was drifting down the stream without a breeze, and the proof of the pilot or captain of the steamer is directly contrary to this ; for he says that she (the sloop) was going about eight miles an hour down the stream under a good breeze, and that if the sloop had, kept her course all wordd have been well; bxat that when within about fifty yards of the steamer she luffed right across the steamer’s bow, and in consequence thereof the Camelia struck her and she was sunk. All the defendants’ witnesses tell the same story, and if they tell the truth then gross negligence was committed by the captain of the sloop in luffing across the steamer’s bow, and in consequence thereof plaintiff cannot recover.
How, I think I have conclusively shown that, according to the testimony of both plaintiff and defendants in this case, gross negligence was committed by the captain of the sloop; one set. of witnesses swearing that the sloop was drifting with the stream and was unmanageable—consequently, letting her do so was negligence; the other set swearing that she had a good wind, that she suddenly luffed across the bow of the steamer, when her course should have been as she was standing before she luffed.
The evidence of the plaintiff’s witnesses as to the sloop’s drifting is the most reliable, and that evidence shows gross negligence on the part of the plaintiff, and he cannot recover.
*100 I have only examined the leading points in this case, because I am convinced from the evidence that negligence has been committed by plaintiff in allowing his vessel to drift for miles and for hours in this great highway, wherein, large numbers of vessels of all kinds, and at all hours, are engaged in the carrying trade of the country; and if I am correct in my views of the law in this case, it must follow, as a matter of course, that plaintiff is without a remedy.
Judgment is reversed and new trial granted, with costs to abide the event.