The intestate came to his death from injuries received on defendant's railroad in the city of Rochester, near midnight, July 1, 1876. He was an educated deaf-mute, intelligent, and in possession of all his faculties, except that of speech and hearing. He was familiar with the railroad at the place where he was injured; and was probably attempting to cross the railroad on his way home at the time he was struck by an engine and fatally injured. No one saw the accident; but the theory of the plaintiff is, that as he approached the railroad tracks, a freight train came from the east, and he waited for that to pass, and then started to cross the track and was struck by an engine backing in the same direction at a distance of about fifty feet in the rear of the train. The manner of the accident, and whether it was caused solely by the negligence of the defendant, without any contributory negligence on the part of the intestate, were matters of controversy *Page 277 
at the trial. The evidence to support the theory of the plaintiff was all circumstantial, except declarations of the intestate which were read in evidence.
Shortly after the passage of the train and the engine, the groans of the intestate were heard, and he was found lying upon the southerly or outer track of the railroad, about fifteen feet from the sidewalk, badly bruised and mangled. He was soon removed to the sidewalk, and afterward to the hospital, where he died in about three hours. After he was removed to the sidewalk, his brother, also a deaf-mute, was sent for; and about thirty minutes after the accident, he there obtained from him, by signs, the declarations the reception of which in evidence are complained of as error. He was produced by plaintiff as a witness and was asked; "what did he tell you?" To this defendant's counsel objected, on the grounds "(1) that the declarations of the deceased are incompetent, (2) that they are no part of the resgestæ, (3) that whatever the conversation may have been, it took place at a time considerably subsequent to the time of the injury, at a place other than where the injury occurred, (4) that the evidence is inadmissible for any purpose." The court overruled the objections, and the defendant's counsel excepted. The counsel further objected to the reception of the evidence, "upon the ground that the declarations of the deceased are not competent for the purpose of establishing either negligence on the part of the defendant, or absence of negligence on the part of the deceased." The court overruled the objection, and defendant's counsel again excepted. The witness then answered: "John said he got hit! John said there was a long train, that he stood waiting for it to go, and an engine followed and struck him." The counsel in objecting to this evidence, and the court in ruling upon the objections, must have known what evidence was sought to be elicited by the question, as the case had before been tried, and the same evidence had been given. (19 Hun, 69.) It is not disputed that this evidence was quite material, and we cannot say that it was not very damaging to the defendant upon a vital issue. Was it competent? We think not. *Page 278 
The claim that the declarations can be treated as part of theres gesta is not supported by authority in this State. The resgesta, speaking generally, was the accident. These declarations were no part of that — were not made at the same time, or so nearly contemporaneous with it as to characterize it, or throw any light upon it. They are purely narrative, giving an account of a transaction not partly past, but wholly past and completed. They depend for their truth wholly upon the accuracy and reliability of the deceased, and the veracity of the witness who testified to them. Nothing was then transpiring or evident to any witness which could confirm the declarations or by which upon cross examination of the witness testifying, or by the examination of other witnesses, the truth of the declarations could be tested.
It is not easy always to determine when declarations may be received as part of a res gesta, and the cases upon this subject in this country and in England are not always in harmony. The case of Commonwealth v. McPike (3 Cushing, 181), andInsurance Company v. Mosley (8 Wall. 397), are extreme cases upon one side, and would justify the reception of these declarations. The case of Regina v. Bedingfield (14 Cox's Cr. Cases, 341), is an extreme case upon the other side, and goes much further than would be needed to justify the exclusion of these declarations. That case was decided by Lord Chief Justice COCKBURN, after consulting with FIELD and MANISTY, JJ., and aroused much discussion and criticism in England. (Bedingfield'sCase, 14 Am. Law Review, 817; 15 id. 71.)
The rule as to res gesta laid down in Commonwealth v.McPike, has since been limited, and very properly applied in other cases in that State. In Lund v. Tyngsborough (9 Cush. 36), in view of the frequent recurrence of questions in regard to the admission of declarations claimed to be part of some resgesta, the court undertook to set forth and illustrate with some particularity the principles and tests by which such questions must be determined, and among other things said: "When the act of a party may be given in evidence, his declarations made at the time, and calculated to elucidate and explain *Page 279 
the character and quality of the act, and so connected with it as to constitute one transaction, and so as to derive credit from the act itself, are admissible in evidence. The credit which the act or fact gives to the accompanying declarations as a part of the transaction, and the tendency of the contemporary declarations as a part of the transaction to explain the particular fact distinguish this class of declarations from mere hearsay;" and further: "Such a declaration derives credit and importance as forming a part of the transaction itself, and is included in the surrounding circumstances which may always be given in evidence to the jury with the principal fact. There must be a main or principal fact or transaction; and only such declarations are admissible as grow out of the principal transaction, illustrate its character, are contemporary with it, and derive some degree of credit from it." In Commonwealth v.Hackett (2 Allen, 136), upon a trial for murder, a witness testified that, at the moment the fatal stabs were given, he heard the victim cry out "I am stabbed," and he at once went to him and reached him within twenty seconds after that, and then heard him say "I am stabbed — I am gone — Dan Hackett has stabbed me." This evidence was held competent as part of the res gesta. BIGELOW, Ch. J., speaking of this evidence, said: "If it was a narrative statement, wholly unconnected with any transaction or principal fact, it would be clearly inadmissible. But such was not its character. It was uttered immediately after the alleged homicidal act, in the hearing of a person who was present when the mortal stroke was given, who heard the first words uttered by the deceased, and who went to him after so brief an interval of time that the declarations or exclamations of the deceased may fairly be deemed a part of the same sentence as that which followed instantly, after the stab with the knife was inflicted. It was not, therefore, an abstract or narrative statement of a past occurrence, depending for its force and effect solely on the credit of the deceased, unsupported by any principal fact, and receiving no credit or significance from the accompanying circumstances. But it was an exclamation or statement contemporary with the *Page 280 
same transaction, forming a natural and material part of it, and competent as being original evidence in the nature of resgestæ." The learned judge also said that the rule which rendersres gesta competent has been often loosely administered by courts of justice so as to admit evidence of a dangerous and doubtful character; and that the tendency of recent decisions has been to restrict within the most narrow limits this species of testimony; and that that court was disposed to apply the rule strictly, and to exclude every thing which did not clearly come within its just and proper limitations. In these cases (the last two) I think the rule under consideration was correctly laid down and applied, and properly defined and limited. In Rockwell v.Taylor (41 Conn. 55), the rule was laid down thus: "To make declarations on this ground admissible, they must not have been mere narratives of past occurrences, but must have been made at the time of the act done which they are supposed to characterize, and have been well calculated to unfold the nature and quality of the acts they were intended to explain; and to so harmonize with them as to constitute a single transaction." In Hanover RailroadCompany v. Coyle (55 Penn. St. 396), the action was against a railroad company for injuring the plaintiff by negligence; and the trial court admitted declarations of the engineer by whose negligence the plaintiff was injured, made at the time of the injury as part of the res gesta; and it was held that they were properly admitted. AGNEW, J., writing the opinion and speaking of the declaration of the engineer, said: "It was made at the time of the accident, in view of goods strewn along the road by the breaking of the boxes; and seems to have grown directly out of and immediately after the happening of the fact. The negligence complained of being that of the engineer himself, we cannot say that his declarations, made upon the spot, at the time, and in view of the effects of his conduct, are not evidence against the company as a part of the very transaction itself."
Without further calling attention to cases outside of this State, I will now refer to a few cases decided by this court in further illustration of this rule. In Moore v. Meacham *Page 281 10 N.Y. 207), the plaintiff sought to show his own declarations, while performing, or endeavoring to perform, his agreement, for the purpose of characterizing the agreement itself, and they were held incompetent. GRAY, J., writing the opinion, said: "The general rule is that declarations, to become a part of the resgestæ, must accompany the act which they are supposed to characterize, and must so harmonize as to be obviously one transaction." In Luby v. H.R.R.R. Co. (17 N.Y. 131), the action was for alleged negligence in running a railroad car, drawn by horses, against the plaintiff in one of the streets of the city of New York. Upon the trial he was allowed to prove that, immediately after the accident, a policeman arrested the driver of the car, and that upon arresting him, as he was getting off the car, and out of the crowd which surrounded him, he asked why he did not stop the car; to which the driver replied that the brake was out of order. This evidence was objected to on the part of the defendant. The plaintiff recovered a judgment which was affirmed by the Supreme Court at General Term. The defendant then appealed to this court, and the judgment was reversed on two grounds — (1), because proof of the arrest was allowed; (2), because the declaration of the driver was received. Upon the latter ground, COMSTOCK, J., writing the opinion, said: "The declarations of an agent or servant do not, in general, bind the principal. Where his acts will bind, his statements and admissions respecting the subject-matter of those acts will also bind the principal if made at the same time, and so that they constitute a part of the res gestæ. To be admissible they must be in the nature of original and not hearsay evidence. They must constitute the fact to be proved, and must not be the mere admission of some other fact. They must be made not only during the continuance of the agency, but in regard to a transaction depending at the very time;" and further: "The declaration was no part of the driver's act, for which the defendants were sued. It was not made at the time of the act, so as to give it quality and character. The alleged wrong was complete, and the driver, when he made the statement, was only *Page 282 
endeavoring to account for what he had done." In Hamilton v.N.Y.C.R.R. Co. (51 N.Y. 100), the plaintiff was ejected from the cars of the defendant on his way from Utica to Albany, at St. Johnsville, by the conductor, because he did not then have a ticket, and was unwilling to pay his fare. He then paid his fare under protest, and re-entered the car, and went to Albany. Shortly after reaching Albany he went to the conductor, and, with the assistance of the person who had acted as conductor west of Utica, satisfied him that he had paid his fare, whereupon the conductor refunded the fare to him; and he was allowed to prove, against the objection of the defendant, a conversation then had between him and the conductor, in which the latter applied to him very slanderous and abusive epithets, as a part of the resgesta. The Commission of Appeals held that that evidence was erroneously received, and reversed the judgment and granted a new trial, holding that that conversation, although it took place at the time the conductor refunded the fare, was not part of theres gesta, in a suit to recover damages for being ejected from the cars at St. Johnsville. In Whitaker v. Eighth Ave. R.R.Co. (51 N.Y. 295), the action was brought to recover damages for an injury caused by the willful act of one of the defendant's car drivers in running one of its cars against the plaintiff, and throwing him into an excavation by the side of the track; and the plaintiff, in order to sustain his allegation of the driver's intention to do him an injury, was permitted to prove by a witness that immediately after the car passed he heard the driver cursing and damning the plaintiff, saying, "Let him fall in and be killed." The trial judge held that the declaration was a part of the res gesta, and, therefore, admissible. The evidence was objected to on the part of the defendant, and the Commission of Appeals decided that it was error to receive it; and for that and other reasons reversed the judgment and granted a new trial, holding that the declaration made by the driver after the car had passed, and the injury was done, was no part of the res gesta. In People v. Davis (56 N.Y. 95), upon an indictment under the statute against abortions, the woman upon *Page 283 
whose person the abortion was attempted being dead, the district attorney was permitted to prove that she went away with the defendant in a buggy, and returned in the night, and what on her return she said to a witness had been done and said to her by the doctor who performed the operation upon the alleged procurement of the defendant. This evidence was objected to on the part of the defendant, and the General Term reversed the judgment of conviction by the Oyer and Terminer. The case was then brought into this court by writ of error on behalf of the people; and the decision at the General Term was affirmed, this court holding that the declarations proved were simply a narrative of a past transaction, and not competent as part of the res gesta. GROVER, J., writing the opinion of the court, said: "In this case the thing done, or res gestæ, was at the doctor's office in another town, and it is clear that its narration by the deceased was no part of that thing. Any thing said accompanying the performance of an act, explanatory thereof, or showing its purpose or intention, when material, is competent as a part of the act. But when the declarations offered are merely narratives of past occurrences they are incompetent. That is precisely this case. The declarations given in evidence were a mere statement of what had been done at the doctor's office, and not any part of what was then done, and, therefore, no part of the res gestæ;" and speaking of the case of the Ins. Co. v. Mosley, supra, he said that the doctrine as to what may be regarded as a part of the res gestæ was certainly carried to its utmost limit in that case by the majority of the court. And he further very appropriately said: "The length of time between the act and its subsequent narration by one of the actors I do not regard as material. The question is, did the proposed declaration accompany the act, or was it so connected therewith as to constitute a part of it? If so, it is a part of the res gestæ and competent; otherwise, not."
In Tilson v. Terwilliger (56 N.Y. 273), FOLGER, J., lays down the rule as to res gesta declarations as follows: "to be a part of the res gesta they must be made at the time of the act done, which they are supposed to characterize; they must *Page 284 
be calculated to unfold the nature and quality of the acts which they are intended to explain; they must so harmonize with those facts as to form one transaction. There must be a transaction of which they are considered a part; they must be concomitant with the principal act, and so connected with it as to be regarded as the result and consequence of co-existing motives." In Casey v.N.Y.C. H.R.R.R. Co. (78 N.Y. 518) it was held, as stated in the head note, that "the testimony of a witness as to what occurred after the accident was competent as part of the resgestæ;" but it was so held for the reason that the occurrences there referred to constituted a part of the transaction. A child had been run over, and on the trial a police officer, who went to the place of the accident immediately after the child was killed, and found the child under the wheels of the car, was permitted as a witness for the plaintiff to state what the engineer in charge of the engine said and did in extricating the body of the child from under the wheels of the car. The evidence was clearly competent as a part of the res gesta.
The counsel for the plaintiff, in his argument before us to justify this evidence, cited but two cases from the reports of this State; Swift v. Mass. Mut. Life Ins. Co., (63 N.Y. 186), and Schnicker v. People (88 N.Y. 192). In the first case it was held that in an action upon a policy of life insurance, issued upon the life of one person for the benefit of another, evidence of declarations made to third parties by the insured at a time prior to, and not remote from, that of his examination and in connection with facts, or acts, exhibiting his then state of health (for instance, declarations made by him when apparently ill, as to the nature or cause of his illness) is competent upon the question as to the truthfulness of statements made by him to the examining physician, as to his knowledge that he had, or had not had, a certain disease, or symptoms of it. It is difficult to perceive how any thing decided in that case, or stated in the opinion of the court, can have any material bearing upon this. In the second case, Schnicher was indicted for the offense of taking a woman, unlawfully *Page 285 
against her will, with the intent to compel her by force, menace, or duress to be defiled. The evidence tended to show that the prosecutrix went to a house of prostitution kept by the prisoner, not knowing the character of the house, for the purpose of obtaining employment as a domestic; that the prisoner detained her there by exciting her fears that if she left she would be arrested, and by keeping the outer door locked; that the prisoner plied her daily with solicitations to consent to the defilement of her person, but she refused; that finally the prisoner told her to go upstairs with a man, and upon her refusal, opened the door of the room where she was and shoved her into the hall, whereupon she went upstairs to her room, and in a half hour after a man called the "boss" came to her room with another man and left him there, and this man by force defiled her: and it was held that the evidence as to what occurred in the room of the prosecutrix was properly received; that the occurrence was part of the res gesta, and might reasonably be inferred to have been in pursuance of the scheme of the prisoner to subject the prosecutrix to defilement. Judge ANDREWS, writing the opinion of the court, said: "We think the evidence was competent. It was so closely connected in point of time with the direction of the prisoner, that the prosecutrix should go to her room with a man, as to constitute a part of the res gestoe, and what followed, might reasonably be inferred to have been in pursuance of the scheme of the prisoner to subject the prosecutrix to defilement." That case furnishes no support for the claim of the plaintiff, that the declarations in this case were properly received.
I have now called attention to the principal authorities in this State, upon the doctrine of res gesta evidence, and I have examined all the other cases which have been reported in this State relating to the doctrine, and I confidently assert that there is no authority in this State for holding that this evidence was competent. Here the res gesta, strictly and accurately speaking, was not the fact that the intestate was injured, nor the fact that he was injured by coming in collision with the *Page 286 
engine. These facts were apparent and undisputed. But the point of inquiry was, how he came to be hit by the engine, with the view of ascertaining whether the accident was solely due to the negligence of the defendant, or partly, or wholly due to the negligence of the intestate. The manner of the accident was, therefore, the res gesta to be inquired into; and these declarations made after the accident had happened, after the train had passed from sight, and the whole transaction had terminated were no part of that res gesta, had no connection with it, and were purely narrative. It has been well said, thatres gesta must be a res gesta that has something to do with the case, and then the declaration must have something to do with the res gesta. It cannot be said that these declarations were in such manner connected with the res gesta as to constitute one transaction so that they and the res gesta were parts of the same transaction. They were not made under such circumstances that they are in any way confirmed by the res gesta, and they had no relation to what was then present, or had just gone by. Suppose the intestate had been found at that point with a mortal wound freshly inflicted by some person; and he had charged that an individual, naming him, had thirty minutes before caused the wound; would that declaration have been competent upon the trial of the person thus charged with the murder? Clearly not, within principles laid down in the cases which I have cited. Suppose in this case the person had been found there with a wound upon his head; and he had stated that the engineer upon one of these engines had struck him, as the engine passed, and the engineer had been upon trial for the offense; would the declaration have been competent? It makes no difference that the intestate had died, and could not therefore be called as a witness. If these declarations were competent, they would have been no less competent if he had survived and brought the action himself, and had been a witness upon the trial. Suppose the engineer upon the engine which struck the defendant had, at the precise time when these declarations were made, also made declarations either favorable or unfavorable to the defendant, could *Page 287 
they have been given in evidence as a part of the res gesta? In view of the authorities which I have cited, that will not be claimed, and yet if these declarations were competent, those made at the same time by the engineer would have been competent; and this illustrates, too, how important it is that a correct rule upon this subject should be laid down in this case.
This evidence cannot be received upon the theory that there is a very strong probability that the declarations made by the intestate were true. The probability would have been equally strong if they had been made several hours later when he was removed to the hospital. The probability is that as he neared his death, he would have told the truth, if he said any thing about it. The same may be said of many statements not under oath. They are frequently made under such circumstances as entitle them to very great, and frequently to implicit confidence; and yet they do not answer the requirements of the law — that a party prosecuted shall be confronted with the witnesses, shall have an opportunity of cross-examination, and that the evidence against him shall be given under the test and sanction of a solemn oath. Declarations which are received as part of the res gesta are to some extent a departure from or an exception to the general rule; and when they are so far separated from the act which they are alleged to characterize that they are not part of that act or interwoven into it by the surrounding circumstances so as to receive credit from it and from the surrounding circumstances, they are no better than any other unsworn statements made under any other circumstances. They then depend entirely upon the credit of the person making them and of the persons who testify to them, and hence are of no more value as evidence in a legal proceeding than the unsworn declarations of a person under any other circumstances.
Even dying declarations are not received in civil actions unless part of the res gesta. Such declarations made in the immediate presence of death, under the most solemn circumstances, when all motive to pervert the truth may be supposed to have ceased to operate, are received only in trials for homicide *Page 288 
of the declarant in cases where the death of the deceased is the subject of the charge, and the circumstances of the death are the subject of the dying declarations. It is said that the reasons for thus restricting the rule may be that credit is not in all cases due to the declarations of a dying person, for his body may survive the powers of his mind; or his recollection, if his senses are not impaired, may not be perfect; or for the sake of ease, and to be rid of the importunity and annoyance of those around him he may say, or seem to say, whatever they may choose to suggest. The rule admitting dying declarations as thus restricted stands only upon the ground of the public necessity of preserving the lives of the community by bringing man-slayers to justice. (Greenl. on Ev., § 156.)
There is no middle ground for receiving declarations of this character — that is, they must be received either as dying declarations or as declarations forming part of the res gesta.
But it is said that although this evidence may have been incompetent to show how the accident happened, it was competent to explain the condition of the intestate at the time he made the declarations. It is clear, however, that they were not received for that purpose. There was no dispute about his condition. It was not questioned that he was badly mangled and bruised, and that his injuries were received upon the defendant's railroad by contact with one of its engines; and so far as the declarations tended to show that he was simply hit by an engine, and received his injuries in that way, they were wholly unnecessary and immaterial. The sole point of the evidence was to show that he approached the track, waited for a long train to pass, and then in attempting to cross the track, was struck by an engine backing in the same direction, thus making a question for the jury as to the contributory negligence on his part. For that purpose the evidence was incompetent, and that was the sole purpose, manifestly, for which it was offered or received. Suppose the intestate had been found there with a mortal stab inflicted half an hour before, and he had said, "I am stabbed, John Doe did it!" and the evidence had been objected to and received, would it have been an *Page 289 
answer to say that it was competent to show his then present condition, and that the whole evidence should not, therefore, have been excluded? The stab would have been apparent, and the declarations wholly immaterial and unnecessary to show it, and the sole purpose and effect of the evidence would have been to show who the murderer was. So here the evidence was given for the sole purpose of showing what took place at the time the intestate was injured, and not for the purpose of characterizing his condition at the time he spoke.
We are, therefore, of opinion that an important rule of evidence was violated in receiving these declarations, and that upon that ground the judgment should be reversed and a new trial granted.
All concur, except RAPALLO, J., not voting, and DANFORTH, J., not sitting.
Judgment reversed.