### BARRY v. SECOND-AVE. R. CO.

*(Common Pleas of New York City and County, General Term.* December 7, 1891.)

**1. STREET RAILWAYS—INJURIES TO CHILD—NEGLIGENCE OF PARENTS.**

In an action for injuries to a child four years old, who was run over by a street-car, the question whether his presence in the street alone was due to the negligence of his parents is for the jury, where it is shown that he was left alone in a room with the door shut for a few minutes before the accident, and escaped therefrom without any one's knowledge, and that he had never been known to go on the street alone before.

**2. SAME—CONDUCT OF DRIVER.**

In such action evidence of the careless and inhuman conduct of the driver of the car after the child had been injured and carried home is incompetent, and its admission is reversible error, as its tending is to inflame the jury and augment the damages allowed.

Appeal from trial term. Reversed.

Action by John Henry Barry, an infant, by James Barry, his guardian *ad litem,* against the Second-Avenue Railroad Company for injuries to plaintiff. There was a verdict for plaintiff, and from judgment thereon defendant appeals.

Argued before DALY, C. J., and BISCHOFF and PRYOR, JJ.

*Merrill & Rogers* and *Augustus S. Hutchins,* (*Payson Merrill,* of counsel,) for appellant. *Cantor, Linson & Van Schaick,* (*John J. Linson,* of counsel,) for respondent.

PRYOR, J. The facts, of which there was competent evidence, that the car was run at a dangerous speed, and that the driver was inattentive in his lookout for pedestrians, were sufficient to justify the jury in the inference of negligence; and we find no such preponderance of proof to the contrary as would warrant us in setting aside the verdict. Whether the parents of the child, he being *non sui juris,* were negligent in suffering him to be in the position of peril where he incurred the injury, presents another, but hardly more difficult, question. Had the plaintiff been a responsible person, he would, on the undisputed evidence, have been guilty of negligence in crossing the street so immediately in front of the horses. The question, then, of the parents' negligence in suffering the child to be at large and unattended is necessarily in controversy. *McGarry* v. *Loomis,* 63 N. Y. 104. In *Hartfield* v. *Roper,* 21 Wend. 615, it was held to be negligence on the part of parents "to allow" a child of tender years to go into the highway unattended. In *Mangan* v. *Railroad Co.,* 36 Barb. 230, the court qualified this language, saying it is negligence "knowingly to allow" a child to go at large in a public street without a protector. But, on reversing the judgment of nonsuit below, the court of appeals held "that the escape of the child into the street through an open window, coming to within four feet of the ground, this being his only means of egress, the door being locked, will not warrant the conclusion, as a matter of law, that the parent was guilty of negligence." 38 N. Y. 455. In *Fallon* v. *Railroad Co.,* 64 N. Y. 13, the mother left the child alone in the room adjoining the street, the door being open, with injunctions to return to the yard; but the child went out into the street, where it was run over by defendant's car. Held, that the question of the mother's negligence was properly submitted to the jury. In *Weil* v. *Railroad Co.,* 119 N. Y. 147, 23 N. E. Rep. 487, the child was with her father in the store, the door of which was open. She went behind the counter, and, while her father supposed she was still there, she escaped into the street, and was run over by defendant's car. Plaintiff having been nonsuited for the negligence of the father, the court of appeals held the ruling to be error, and said the question should have been submitted to the jury. *Ames* v. *Railroad Co.,* 56 N. Y. Super. Ct. 3.

The principle to be deduced from these and all the cases is that if the negligence of the parent do not appear beyond rational controversy; if opposite

inferences as to the fact of negligence may reasonably be drawn from the evidence,—then the question is for the jury, and not for the court as matter of law. In the case before us the child dined with its father and mother in a room adjoining the shop. Father and child went into the shop, leaving the mother at dinner. The father, having kissed the child, went out, closing the door tightly behind him. The knob of the door was three feet from the floor. Having finished dinner, five or ten minutes after the father left, the mother went into the shop to look for the child, and, not finding him, she opened the door and saw a man carrying him. The child had never gone into the street with her knowledge or consent, and he did not on the occasion in question go out with her knowledge or consent. How or at what moment the child left the shop is not apparent on the evidence. Upon this predicament of fact, it was obviously the duty of the court to submit to the jury the question of the parents' contributory negligence; and their verdict is not so contrary to the evidence as to require us to set it aside. It follows, further, that there was no error in refusing to charge that the mere fact of the presence of the child in the street, alone and unattended, "was *prima facie* evidence that he was exposed through the negligence of his parents."

Hitherto the case is clearly with the respondent; but, unfortunately, he persisted in pressing upon the court an item of evidence the admission of which is fatal to the judgment. The plaintiff inquired of his witness, "You saw the driver walking up Second avenue?" The answer was, "Yes, sir." The witness was then asked, "What was he doing when you saw him?" To this question counsel for the defendant objected, on the grounds that the evidence so called for was irrelevant, hearsay, and not of the *res gestæ*; but the court admitted it, to which exception was duly taken, and the witness answered, "He was laughing and chatting, and walking along with the men up to 123d street and Second avenue." The conduct of the driver, thus given in evidence, was subsequent to the accident, and after the injured child had been "carried around the corner to his mother." The learned counsel for the respondent essays to sustain the ruling both upon principle and authority. He argues that the evidence was competent as part of the *res gestæ*, and he cites authorities in support of his contention. But here was no declaration coincident with the accident, and explanatory of its occurrence; but conduct subsequent to the accident, and in no manner or degree relating to it. The proof was of acts of an agent to affect his principal with liability; but the driver was not at the moment engaged in his employer's business, *i. e.*, driving the car, nor had the conduct shown any conceivable connection with his service or duties. The things he was proved to have done—"laughing and chatting"—were purely personal, and for which his master was in no way responsible. If it be argued that the demeanor of the driver evinces a disposition of brutality that would make him reckless in injuring others, the answer is that the most direct and conclusive proof of his inhuman nature would raise no legal presumption of his negligence in causing the accident, and so would not be competent evidence on the issue. Nor do the cases adduced by the learned counsel for the respondent lend the least countenance to the ruling in controversy. *Courtney* v. *Baker*, 34 N. Y. Super. Ct. 529, only enunciates the familiar, and undoubtedly correct, doctrine that "what a person said at the time of an accident, which would tend to prove that the accident was caused by his carelessness, is competent evidence, under the rule that it was part of the *res gestæ*." In *Casey* v. *Railroad Co.*, 78 N. Y. 518, 523, the report does not disclose what the challenged evidence was,—only that it was of something "that occurred after the accident." In allowing it the court, by MILLER, J., said: "It was merely following up the evidence which had previously been given by the same witness, and constituted a part of the transaction." *Waldele* v. *Railroad Co.*, 95 N. Y. 284. In *Railroad Co.* v. *Coyle*, 55 Pa. St. 396, the ground of the decision approving the admission of the declara-

tions of the engineer was that "they were made at the time of the accident, as part of the *res gestæ.*" Id. 402. On the contrary, the ruling under review is discredited by the uniform course of adjudication in New York, and, for that matter, in other states as well. *Luby* v. *Railroad Co.,* 17 N. Y. 131; *Moore* v. *Meacham,* 10 N. Y. 207; *Hamilton* v. *Railroad Co.,* 51 N. Y. 100; *Whitaker* v. *Railroad Co.,* Id. 295; *People* v. *Davis,* 56 N. Y. 95; *Tilson* v. *Terwilliger,* Id. 273; *Waldele* v. *Railroad Co.,* 95 N. Y. 274; *Lund* v. *Tyngsborough,* 9 Cush. 36; *Rockwell* v. *Taylor,* 41 Conn. 55. In *People* v. *Davis, supra,* GROVER, J., said: "The length of time between the act and its subsequent narration by one of the actors I do not regard as material. The question is, did the declaration accompany the act, or was it so connected therewith as to constitute a part of it? If so, it is part of the *res gestæ,* and competent; otherwise not." In *Waldele* v. *Railroad Co., supra,* EARL, J., said: "The manner of the accident and the *res gestæ* was to be inquired into. *Res gestæ* must be *res gestæ* that has something to do with the case, and then the declaration must have something to do with the *res gestæ.*" In *Whitaker* v. *Railroad Co., supra,* a run-over accident, a witness was allowed to prove that, immediately after the car passed, he heard the driver cursing and damning the plaintiff, saying, "Let him fall in and be killed;" and for the admission of this evidence, among other errors, the court reversed the judgment.

The evidence under criticism being incompetent, the inquiry is whether its admission was prejudicial error. The settled rule is that, in common-law actions at least, the court of review will reverse for errors in evidence, unless it be apparent that the errors were incapable of harm. Now, it is impossible for us to predicate of the error in question that it was of no detriment to the defendant. What more likely to inflame a jury with anger and indignation, and so to disturb the serenity of their judgment, than such indifference and inhumanity as was displayed by this driver in the presence of the wounds and agony he had inflicted upon the helpless child? Nay, it is impossible to doubt' that the evidence was introduced for the very purpose of its effect on the feelings of the jury, and that it probably operated as intended is not negatived by the amount of the verdict, ($5,000.) "Illegal evidence, tending to excite the passions, arouse the prejudices, awaken the sympathies, or influence the judgment of jurors, may not be considered harmless." *Hutchins* v. *Hutchins,* 98 N. Y. 57; *Anderson* v. *Railroad Co.,* 54 N. Y. 334. We regret that for the error indicated the judgment must be reversed. Judgment reversed, and new trial ordered, costs to abide the event. All concur.