[Filed June 25, 1885.]

## MICHAEL SULLIVAN v. OREGON RAILWAY AND NAVIGATION COMPANY.

EVIDENCE—DECLARATIONS OF PARTY—RES GESTÆ.—In an action for damages for injuries resulting from ejectment from a railroad train, the declarations of the plaintiff immediately after the event, in the absence of the defendant, narrating the occurrence, are not part of the *res gestæ*, and cannot be given in evidence.

ID.—OWNERSHIP OF TRAIN.—In such an action it is incumbent on the plaintiff to prove, not who was the owner of the train, but who was using it at the time.

EXEMPLARY DAMAGES.—Exemplary damages cannot be recovered of a corporation or other person for the wrongful acts of its servant, even when wilful and malicious, unless the employer directed the doing of the act, or ratified it when done, or unless it is chargeable with gross negligence in the employment or retention of such servant.

ID.—PLEADING.—In order to recover exemplary damages it must appear from the complaint that the act occasioning the damage was done maliciously, or was the result of wilful misconduct of the defendant, or of that reckless indifference to the rights of others which is equivalent to an intentional violation of them.

WASCO COUNTY.     Defendant appeals.     Reversed.

The facts are stated in the opinion.

*Rufus Mallory*, and *F. P. Mays*, for Appellant.

To be a part of the *res gestæ* the declarations must be made at the time of the act done which they are supposed to characterize, and well calculated to unfold the nature and quality of the facts which they are intended to explain, and so to harmonize with them, as obviously to constitute one transaction. (*Enos* v. *Tuttle*, 3 Conn. 250; *Nutting* v. *Page*, 4 Gray, 584; *Lund* v.

*Tyngsborough,* 9 Cush. 36.) The declaration of a party cannot be introduced as a part of the *res gestæ,* when the declaration is itself the proof of the main fact sought to be established. (*Brown* v. *Lusk,* 4 Yerg. 210; *Chapin* v. *Marlborough,* 9 Gray, 244; *Lund* v. *Tyngsborough, supra.*) Declarations which are merely narrative of past events are not admissible as part of the *res gestæ.* (1 Greenl. Ev. § 108; *State* v. *Davidson,* 30 Vt. 377; *Worden* v. *Powers,* 37 Vt. 619; *Commonw.* v. *Densmore,* 12 Allen, 537; *Bacon* v. *Inhabitants of Charlton,* 7 Cush. 581; *State* v. *Pomeroy,* 25 Kans. 349; *Mutcha* v. *Pierce,* 49 Wis. 231; *Corder* v. *Talbott,* 14 W. Va. 290, 291; *Nutting* v. *Page, supra; Lund* v. *Tyngsborough, supra.*) To be part of the *res gestæ* they must be contemporaneous with the main fact. (1 Greenl. Ev. 108; *State* v. *Pomeroy, supra; Mutcha* v. *Pierce, supra; Downs* v. *Central R. R. Co.* 47 N. Y. 83; *Cleveland C. & C. R. R. Co.* v. *Mara,* 26 Ohio St. 185; *Mitchum* v. *State,* 11 Ga. 615; *State* v. *Brown,* 64 Mo. 371.) These declarations were offered and admitted merely to support Sullivan's testimony as to the main fact, by showing that he had said the same thing at another time and place. This is never allowed. (*Corder* v. *Talbott, supra; Downs* v. *Central R. R. Co. supra; Chicago & N. W. R. R. Co.* v. *Finlayson,* 57 Ill. 265; *State* v. *Davidson, supra; Worden* v. *Powers, supra; Banfield* v. *Parker,* 36 N. H. 354; *Woodward* v. *Paine,* 15 Johns. 493; *Cleveland C. & C. R. R. Co.* v. *Mara,* 26 Ohio St. 185.)

*Gates & Wilson,* and *J. E. Atwater,* for Respondent.

When exemplary damages are claimed, all the circumstances connected with the case are admissible in evidence, and in this respect the courts have always been very liberal. This was a circumstance proper to place before the jury. (1 Sutherland Dam. 724; *Voltz* v. *Blackmar,* 64 N. Y. 440; *Bacon* v. *Towne,* 4 Cush. 217.) Incidents not forming a part of a calculated policy of the plaintiff, and thus unconsciously associated with the principal transaction, become evidence of the character of the transaction, and are part of the *res gestæ.* (*Ins. Co.* v. *Mosley,* 8 Wall. 397; *Commonw.* v. *McPike,* 3 Cush. 181; *People* v.

*Vernon,* 35 Cal. 49; *State* v. *Garrand,* 5 Oreg. 216; *King* v. *Foster,* 6 Carr. & P. 325; *Boyden* v. *Moore,* 11 Pick. 362; Abbott Trial Ev. 648; Wharton Crim. Ev. 263; *Harriman* v. *Stowe,* 57 Mo. 93; *Commonw.* v. *Rowe,* 105 Mass. 590.) The right to recover exemplary damages applies to corporations for the acts of their agents as well as to natural persons, and this, too, to acts wilfully and maliciously done, as well as to those carelessly or negligently done. (*Goddard* v. *Grand Trunk Railway Co.* 2 Redf. Am. Ry. Cas. 502; *Atlantic & G. W. Railway* v. *Dunn,* 2 Redf. Am. Ry. Cas. 520; *New Orleans etc. R. R. Co.* v. *Bailey,* 40 Miss. 453; *New Orleans etc. R. R. Co.* v. *Hurst,* 36 Miss. 660; *Hopkins* v. *Atlantic & St. Lawrence R. R.* 36 N. H. 9; *Baltimore & O. R. R. Co.* v. *Blocher,* 27 Md. 277; *St. Louis A. & C. Railroad Co.* v. *Dalby,* 19 Ill. 353; *Passenger R. R. Co.* v. *Young,* 21 Ohio St. 518; *Balt. & Yorktown Turnpike* v. *Boone,* 45 Md. 344.)

THAYER, J.—This appeal is from a judgment rendered in an action to recover damages in consequence of the appellant having been put off a train of cars alleged by him to have been owned and operated by the appellant. The respondent alleged in his complaint that on the 10th day of October, 1883, he went aboard of said train of cars at Dalles City, a regular station on the line of appellant's road, for the purpose of being conveyed to Portland, and that the conductor thereof, after the cars had started and were in motion, ejected him therefrom, by reason of which he was thrown under the wheels of the cars, and had his right foot so badly crushed that it had to be amputated. The language of the allegation of the complaint referred to is as follows :—

"That after the said train of cars had gone about one fourth of a mile from said Dalles City, and while said train of cars was rapidly moving along its said railway, the defendant, by its agent and employee, who then had control, care, and conduct of said train of cars for defendant, carelessly, negligently, and with force, ejected this plaintiff from its said train of cars, and caused him to fall from said cars to the ground while the same were so

rapidly moving, and by reason of the said careless, negligent, and wrongful acts of the defendant, the plaintiff was thrown under the wheels of said cars, which cars then and there, on account of the wrongful acts of the defendant, as aforesaid, ran upon and over the plaintiff, and crushed and wholly destroyed his right foot."

The amount claimed, of general and special damages, was $50,000. The appellant took issue respecting ownership and operation of said train of cars, the ejecting the respondent therefrom, and the damages alleged by respondent to have been sustained. It also set up in its answer that the injury received was in consequence of the appellant's carelessness and negligence. It appears from the bill of exceptions that the controversy at the trial was mainly as to whether the conductor of the train pushed the respondent off the cars, or that he jumped off at his own instance. The respondent testified that the conductor pushed him off while the cars were in motion; the conductor, on the contrary, denied that he touched him; testified that he did not know when he got off the cars; that he went and pulled at the bell-rope, and when he looked around the respondent was off. Another witness called by appellant, who seems to have been a passenger aboard the train, testified that he saw the whole affair, and corroborated the testimony of the conductor; stated that the conductor did not touch respondent. He also testified that the respondent jumped off the train. The jury returned a verdict for the respondent for the sum of $11,459, upon which the judgment appealed from was entered. The questions submitted upon the appeal involve the competency of some of the evidence given to the jury, and the correctness of a part of the instructions of the court to the jury, which we now proceed to notice.

The bill of exceptions also shows that the respondent was a witness in his own behalf; that after he took the stand and was sworn he stated that he went aboard the train of cars at Dalles City on the 10th day of October, 1882; the train was bound west; that it was in front of the Umatilla House where he went onto the train; that he went aboard of it for the purpose of

going to Portland; that the train was an Oregon Railway &
Navigation Company's train, engine No. 80, marked "O. R. &
N. Co."; that it was a passenger train; that one Garfield was
the conductor. He was asked by his counsel to state all that
took place on board the train at and about the time he received
the alleged injury. In answer to the questions he began by
stating that he got on the train in front of the Umatilla House
and had a conversation with the baggage-master, which he began
to relate, whereupon the appellant's counsel objected to it, but
the court overruled the objection, and allowed the respondent's
counsel to ask the witness this question: "State what you said
to the baggage-master, and what he said to you." To which
ruling the appellant's counsel excepted, and the witness stated in
answer to the question that he got on the train just before it
started; that he asked the baggage-master how Garfield was to
ride with, to which the latter answered: "I guess he is all right;
if he makes any 'kick' refer him to me."

This evidence was clearly inadmissible. The conversation
between the witness and the baggage-master was wholly incom-
petent, but a majority of the members of the court are of the
opinion that the evidence in nowise prejudiced the appellant;
that it was really more calculated to prejudice the respondent's
case than to benefit it. The witness then proceeded to narrate
the circumstances of the injury. He testified that soon after the
train started Garfield came out of the baggage car while he was
standing on the platform at the forward end of the smoking car.
A man named Clayton was with witness. There were two
other men on the platform; the passengers went inside. While
we were conversing Garfield came out of the baggage car, and I
spoke to him for a ride to Portland, as a favor from a railroad
man. He said, "I don't know you, and don't want to." Clayton
handed him his pass while we were talking. Garfield said to
me, "you will have to get off this train; you can't ride." Wit-
ness told him, "All right; stop his d—— train and he would
get off." Witness then states that the conductor pulled the bell
two or three times to stop the train, but it did not stop; that
thereupon the conductor pushed him off the train, whereby he

received the injury complained of. After the witness had been examined he called Charles Pool as a witness, who testified, among other things, that he saw the train pass west, and shortly after it had gone heard some one cry out "Oh, say! Oh, say!" Went to where the person was and found the respondent. The respondent's counsel then asked the witness this question: "What did respondent say?" The appellant's counsel objected to the question, upon the grounds that the testimony was not competent. The court overruled the objection, and the witness answered: "I asked him what was the matter, and he said: 'The son of a bitch pushed me off' or 'throwed me off'; I am not sure which. This was two or three minutes after the train passed. The train stopped just as it came through the cut out on the flat."

The respondent then called two other witnesses to prove same facts, who were each asked some questions, which were objected to by appellant's counsel upon the same grounds, and the same ruling was made by the court, and exception taken. One of the witnesses answered that respondent said upon the occasion referred to, "Garfield pushed me off"; and the other, "that he had been pushed off the train." This testimony was calculated to influence the verdict of the jury, and if incompetent, the judgment entered thereon should be reversed. Such testimony has in many instances been admitted in evidence, and courts have attempted to give reasons for holding it competent. The line of authorities in this country which maintain its admissibility seems to have commenced with the case of *Commonw.* v. *McPike*, 3 Cush. 184. The courts that have followed the ruling in that case have frequently manifested a sort of hesitancy as to its correctness, but have concluded that such statements were a part of the *res gestæ*, and been content to place their decisions upon that ground.

That mode of disposing of important questions of proof in such cases is becoming quite unsatisfactory. Its tendency has been to overthrow one of the fixed principles of the law, that the best evidence which the nature of the case is susceptible of shall be produced, and it leads to uncertainty and doubt. It is very

easy to say that the statements and declarations of a party who has received an injury, made after its occurrence, as to how it was occasioned, are a part of the *res gestæ*, but extremely difficult to explain it, and many times wholly impossible to point out any rule under which the determination has been arrived at. An act may sometimes be explained, or its nature and quality be ascertained, by an accompanying declaration which may be properly regarded as a part of the transaction in which it occurred, but it is never the act itself, nor the mere evidence of it.

If a party were to be set upon and wounded, his narration of the circumstances attending the affair, or declarations as to who inflicted the injury, made after the transaction was ended and his assailant gone, would be no part of the occurrence; it could only be his own account of the affair. None of the class of cases referred to furnish any certain test as to when such declarations may be given in evidence as a part of the *res. gestæ.* It is said in some of them that they must have been made at the time the act transpired; but in others, that a considerable time may elapse and they still be such part ; that each case must depend upon its own peculiar circumstances, and be determined by the exercise of a sound judicial discretion. I do not fully understand what is meant by the latter expression. If it is intended by "a sound judicial discretion" that the court before whom the trial is had must judge as to whether the transaction was continuing when the declaration was made, or had ended prior thereto, then the question would not differ from other questions regarding the admissibility of testimony; the court would consider the facts and circumstances surrounding the affair, and determine therefrom as to its competency; but if, on the other hand, it is to be understood that the court is to decide the question in accordance with the judge's notions as to the justice of the particular case, then it is afloat without any chart to direct it. Precedents, under that view, would be of little value, as the peculiar circumstances attending each transaction would be likely to vary from those surrounding others of a like character which had been adjudicated upon sufficiently to authorize a different holding. Such theory necessarily abrogates any law upon the subject, as law is,

as a rule, applicable to a class of cases which are alike in principle.

The question is too important to be left to such uncertainty, and there is no occasion for leaving it to be determined by vague speculation.   The authorities upon the subject are quite numerous, and are widely different.   The Massachusetts cases, with the exception of the one referred to, have generally held to a reasonable and consistent rule upon that branch of evidence. They have repudiated the notion that the admission of such declarations is left to the discretion of the presiding judge, and admit them only when they are calculated to explain the character and quality of the act, and are so connected with it as to derive credit from the act itself, and to constitute one transaction.   (*Lund* v. *Inhabitants of Tyngsborough,* 9 Cush. 41.) This appears to me to be as liberal a rule as any court can, consistently with the rules of evidence, sanction, and I think it very doubtful whether our courts, under certain provisions of our statute, would have any right to permit the introduction of declarations of parties as evidence, except under the condition of circumstances above referred to.   Section 672, Civil Code, provides that a witness can be heard only upon oath or affirmation, and he can testify of those facts only, which he knows of his own knowledge; that is, which are derived from his own perceptions, except in those few express cases in which his opinions or inferences or the declarations of others are admissible.   And section 676, Civil Code, provides that where the declaration, act, or omission forms part of a transaction, which is itself the fact in dispute, or evidence of that fact, such declaration, act, or omission is evidence as part of the transaction.   These provisions of the statute are declaratory of the law upon the subject, and are binding upon the court; they limit the right of a party, in the introduction of that character of testimony, to those cases where the declaration forms part of the transaction which is in dispute, and provide that it is evidence as part of it.

This statute undoubtedly lays down the rule as broadly as many of the decisions of the court have done, especially some of the later ones (See *Waldele* v. *New York C. & H. R. R. Co.* 95 N. Y.

274, and *People* v. *Ah Lee*, 60 Cal. 85) ; but many others have gone a most surprising length beyond it. Among them is that of *Insurance Co.* v. *Mosley*, 8 Wall. 397. That decision and all of a kindred nature cannot, in my opinion, be maintained without doing violence to the law of evidence. It cannot be established by any system of logic that can be employed, that the statements and declarations of a party to a transaction, made after it has ended, are a part of it. It would be a moral imposs-ibility. Take the case under consideration as an example. The respondent went onto the appellant's train of cars at The Dalles, and desired to be carried to Portland without paying fare. The appellant's conductor refused to carry him upon such terms. After the train started, and had gone a short distance, the respondent is found off the train, upon the ground, in an injured condition, and he alleges as a cause of action against the appellant that the conductor pushed him off. The appellant in its answer denies that the conductor pushed him off, and avers that he jumped off. This is the principal issue in the case. The affair, whatever it was, occurred aboard the train of cars; everything that transpired between the conductor and the respondent took place there and ended fully and completely when the respondent left the cars, whether he was pushed off or jumped off. When the respondent went from the cars to the ground and the train had passed on, the transaction between him and the conductor was as effectually terminated as it was a month later. In a very few minutes after the train had passed the spot where the respondent struck the ground three persons were attracted towards him, and naturally inquired how he came in that condition, and he answered, as an enraged person would be likely to under the circumstances, as before stated, and which implicated the conductor in a reckless and grievous wrong to him. Had the respondent complained of pain and suffering it would doubtless have been competent to have given that fact in evidence as proof of his injury ; but to prove what he said the conductor did in order to attach the blame to the latter, and in his absence, is a distortion of the rule which permits the declara-tions of a party to be given in evidence. How can this state-

ment be claimed to have been a part of the transaction between the respondent and the conductor when the affair was at an end, and the latter party probably a mile away at the time? I am unable to indorse any such view. The statement of the respondent at the time referred to, as to how he came off the cars, is as undoubtedly hearsay evidence as any narration of the affair he has given since that time. It occurs to me that courts at *nisi prius* would have but little difficulty in determining when the statements of a party in such cases were admissible as a part of the *res gestœ*, or were incompetent upon the grounds that they were only hearsay, if they would consider whether the transaction to which they related was continuing when they were made, or terminated at the time, and make that the test of the matter; and I believe that much of the embarrassment they labor under in applying the rule in such cases has arisen in consequence of an attempt that has frequently been made to stretch the *res gestœ* doctrine to an unnatural extent in order to suit some supposed meritorious case, and which has led to the great diversity of decisions and confusion of the law upon that subject.

The rule is very properly stated in *Williams* v. *Bowdon*, 1 Swan, 282, in the following language : " The declarations are evidence because they are part of the thing *doing;* if, therefore, the thing shall have been *done* and *concluded,* declarations then made are not evidence." This is in consonance with the rule as declared in the provision of the Oregon statute before referred to ; but the legislatures of some of the other States have, as I view it, authorized its extension. It is declared by statute in the State of Georgia that " declarations accompanying an act, or *so nearly* connected *therewith in time as to be free from all suspicion of device or after-thought,* are admissible in *evidence* as part of *res gestœ.*" (Code Ga. 1873, § 3773.) Under a provision of that character a declaration made after the transaction might be admissible ; but the rule here is more restricted, and the declaration was improperly admitted. This disposes of the case, and it would be unnecessary to say anything more if it did not have to go back for a new trial ; but, as it has to take that course, it becomes our duty to pass upon other questions assigned as error.

XII. OREG.—26.

The two instructions asked for by the appellant's counsel, viz. : " (1) The burden of proving that the train belonged to the defendant is on the plaintiff; this must be shown by proof, and if not proved the defendant is entitled to a verdict, whether the plaintiff was put off the train or not. (2) If the train belonged to the Northern Pacific Railroad Company, the mere fact that the conductor was paid by the Oregon Railway & Navigation Company would not be sufficient to charge the defendant with the consequences of this injury"; — were properly denied by the court. The ownership of the train was not important; the material question was, which of the two companies was using it at the time. If it were being run by the appellant in its business at the time the affair happened, the liability would attach to that company, if any such liability were created. The conductor may have been the servant of the appellant and employed in its business, although the train — that is, the property interest in it — may have belonged to the Northern Pacific Railroad; the train may have belonged to the latter company, but not been under its control at the time.

The second instruction asked for, which is above stated, may be true as an abstract proposition, but it had no sufficient relevancy to the case. The real question before the jury was, whose servant was the conductor when the affair took place? That he was paid wages by the appellant was some evidence that he was its servant at the time, and proof that the Northern Pacific Railroad Company owned the train, doubtless tended, in a measure, to show that it had the management and control of it when the occurrence happened; but the question was not of such a nature as to require the proof of it to be left to inference. The railroad was admitted to belong to the appellant; the conductor received his pay from appellant, and, presumably, the train was at the time being used in the appellant's business. In order to rebut this presumption the appellant should have proved by direct testimony that the other company was using the roadbed and running the train in its own business and for its own use. If the appellant's counsel had asked the court to instruct the jury that "if the train belonged to the Northern Pacific

Railroad Company, and at the time of the occurrence of the affair was in the use and employment of that company, under a contract for the temporary use of the appellant's road-bed, the mere fact that the conductor was paid by the appellant would not be sufficient to charge appellant with the consequences of the injury," he would have been entitled to have had it given, if there was any evidence before the jury tending to prove the fact; but in its present form it is too indefinite. Besides, the evidence did not justify the instruction. The payment of the conductor by the Oregon Railway and Navigation Company was not, under the evidence, "the mere fact" showing that it had no further connection with the train; there was the other fact before the jury, which was conceded, to wit, that said last-named company was the owner and proprietor of the road itself at the time the event happened.

The court, after charging the jury that it was conceded in the case that just previous to the accident the respondent was on board the train and attempting to ride to Portland thereon without paying fare, and that, under those circumstances, the agents of the company had a right to put him off if he refused to pay such fare, using reasonable care and caution in so doing, and that if, in putting him off under such circumstances, the respondent was injured, without negligence or blame upon the part of the appellant, then it was not liable for such injury; but it was its duty to first stop the train, and then put the respondent off; and if the appellant, through its agent, put the respondent off while the train was still in motion, and thereby caused the injury, the appellant would be liable therefor; and that if the jury found that the injury to the respondent was caused by the negligence or wilful misconduct of the appellant, committed through its agent, and that the respondent did not contribute to it by his own negligence, they should find for the respondent, and that the measure of damages would be, (1) for the expense of procuring the necessary medical attendance, to an amount not exceeding $150, the sum alleged; (2) for the necessary expense of securing care and nursing, to an amount not exceeding $309; (3) for bodily suffering, impaired working capacity, mutilation,

and disfigurement necessarily resulting from the injury; (4) for such mental suffering, apprehension, and anxiety as necessarily result from the injury, proceeded to instruct them, as a fifth item of damages, that if they should find from the evidence that the injury was malicious and wilful, or was caused by gross and wanton negligence, amounting to a total disregard of all social obligations, they would allow such sum as they would deem just and proper by way of punishment, and to deter others from such malicious and grossly and wantonly negligent acts in the future.

This last instruction was excepted to by the appellant's counsel, and it becomes our duty, as before indicated, to consider its correctness. It has in many instances been seriously questioned whether exemplary or punitive damages could properly be allowed in any private action. It would be extremely difficult, if not impossible, to give any good reason for such allowance, since the rule giving actual damages has been so liberally construed; but however that may be, it seems to have attached itself to our jurisprudence, and we are made recipients of its benefits and compelled to endure the hardships it imposes. However, I am opposed to extending the rule to cases to which it was never intended to apply, and would work injustice if the application were enforced. When the conduct of a person has been wilful, malicious, and wanton or reckless, and an injury has resulted to another in consequence of it, a jury might, with a semblance of reason, in an action to recover damages for such injury, assess something more than a mere compensatory sum therefor. That course, doubtless, would have a salutary effect in two respects; would visit the wrong-doer with wholesome punishment, and afford an example calculated to deter others from the commission of malevolent acts; but to attempt to extend the doctrine so as to visit the punishment upon innocent parties is, to my mind, unreasonable and unjust. I cannot see any principle upon which an employer, whether a natural or artificial person, can be made liable for the acts of his or its servant, beyond compensatory damages, unless the employer directed the doing of the act, or ratified it after it was done. In the case at bar the railroad company had been guilty of no

wanton or reckless act in the premises, whatever its conductor may have done; then why should it be punished? It is made liable for damages by the acts of its conductor, by reason of the duty it owes to the public. It has impliedly stipulated to observe certain duties and obligations, among them that it will transport passengers upon its train of cars safely and with reasonable dispatch, and that it will insure them proper treatment while in transit; and its duty and obligation may be violated through the acts of its employees. The act of the conductor, whether it be negligent, malicious, or reckless, will effect such violation the same in the one case as in the other. Should the conductor wantonly and cruelly mistreat a passenger, the company is made liable, not strictly for the act of the conductor, but for the reason that the company has failed to perform the duty it undertook, and the obligation it tacitly agreed to observe.

The acts of the conductor in the present case may have been so malicious and reckless as to indicate a depraved mind, and if such were the fact he ought to be punished for his wickedness; but by what rule of consistency can that punishment be inflicted upon the company? It did not obligate itself that it would not engage the services of anyone who would never display malice or exhibit recklessness, and it should not be made answerable for the sins of the conductor, except so far as they effected a breach of its contract before referred to. It is claimed, however, in the decisions of the courts, which hold that a railroad company is liable to exemplary or punitive damages, that the conductor of a train of cars is *pro hac vice* to be regarded the company itself; but this certainly is only a fiction of law. The fact that the company acts through agents in the transaction of its business is no more peculiar than where a natural person transacts his business through agents. The conductor usually has no pecuniary interest in the company beyond the stipend he receives for his services; he is not punished by the judgment against the company, whatever may be the amount of it. Corporations acquire their vitality by subscription for its capital stock. In this State one half thereof must be subscribed before it is allowed to engage in the business proposed in its articles,

then the stockholders have a meeting, and choose directors, who thereafter manage its affairs. The pecuniary interest, the real substance of the corporation, is represented by its stock; its entire assets belong to the owners of the stock. They may be persons in moderate circumstances, who have invested their surplus earnings in the purchase of the stock, relying upon dividends to be realized therefrom. It is the stockholders who are affected injuriously by a judgment against the corporation, and who are punished when exemplary damages are awarded in the action, and if there is any justice in a rule which allows it in such a case, I am apprehensive that I shall never be able to discover it. Different views are entertained upon the question by courts in the different States, and while those of quite a number of them have held that such damages were allowable against a corporation for the acts of its agents, yet those of a very respectable number of the other of the States have maintained to the contrary. I think the rule upon the subject laid down in *Cleghorn* v. *New York Cent. & H. R. R. Co.* 56 N. Y. 44, the correct one, which makes the master liable for such damages when he is chargeable with gross neglect in the employment or retention in his service of an incompetent servant, knowing at the time of his unsuitability, or that he authorized or ratified the act of the servant in the particular case. The question as to whether the complaint is sufficient to permit the recovery of that character of damages in the case need not, under the view taken of the last point, be decided. It will not be amiss, however, to suggest that, in order to recover exemplary damages in any case, it must appear from the complaint, either by direct averment or from necessary inference, that the act occasioning the damages was done maliciously, or was the result of the wilful misconduct of the defendant, or that reckless indifference to the rights of others which is equivalent to an intentional violation of them.

The judgment appealed from is reversed, and the case remanded to the court below for a new trial.

LORD, J., concurs, except as to the last point discussed.

WALDO, C. J., dissented.