Argued March 11; affirmed October 21; rehearing denied
November 25, 1930.

# WEMETT *v.* MOUNT ET AL.

(292 P. 93)

*Eugene K. Oppenheimer* and *Fletcher Rockwood* both of Portland (Wilbur, Beckett, Howell & Oppenheimer, Carey & Kerr, all of Portland, Jos. E. Hedges of Oregon City on the brief) for appellants.

*Louis E. Schmitt* and *Bradley A. Ewers* both of Portland for respondent.

BEAN, J. ■ Defendant predicates error of the court in overruling objection of the defendants to the following question for the reason that it was not a part of the *res gestae*: "Q. When she came into this room, Nellie Lynch came in, what did she do or say?" The objection being overruled, the witness answered: "A. She came in and said: 'My God, you look as though you are about to pass out, I forgot all about your being here.'" Defendants cite *Sullivan v. O. R. & N. Co.*, 12 Or. 392 (7 P. 508 53 Am. Rep. 364); *Fredenthal v. Brown*, 52 Or. 33 (95 P. 1114). It appears when Miss Lynch first entered the room where plaintiff was lying on the cot she spoke those words at the very moment that the injury was being inflicted upon plaintiff, and afterwards she shut off the current and removed the electrodes from plaintiff's body. The language is a part of the *res gestae*. Moreover, Miss Lynch was the servant or agent of defendants, performing the service for which the complaint is made by plaintiff. The case is entirely different from *Sullivan v. O. R. & N. Co.*, supra, where the statements of plaintiff, after the occurrence of an event in regard thereto, were admitted in evidence and held to be not a part

of the *res gestae*. The case is not in point. The rule is well stated in the first syllabus to the case of *Fredenthal v. Brown,* supra:

"The acts of an employee within the scope of his employment are the acts of the employer, and the statement of the employee characterizing such acts and constituting a part of them are competent evidence against the employer; but statements of a past transaction made by the employee, and not a part of an act done by him, are not within the scope of the employment, and cannot be admitted in evidence to affect the employer."

The evidence objected to comes within the first part of the rule thus stated. There was no error in admitting evidence of the declarations of Miss Lynch made during the performance of the act which was within the scope of her employment.

■■ Defendants assign that the court on direct examination of defendants' expert witness, Dr. E. B. McDaniel, erred in sustaining the objection of plaintiff to the following question and in rejecting defendants' offer of proof: "Q. Did you make a vaginal examination today. A. Yes, sir. Q. What condition did you find from the vaginal examination?" Defendants tendered testimony of the witness to the effect that he made the examination and that the nervous condition which plaintiff complained of was due to goiter and the conditions naturally flowing therefrom and not the result of the burns.

In 17 C. J., at page 1031, the rule is thus stated:

"So too defendant has a right to show by medical testimony that the diseased condition probably arose from another source and was not caused by the injury complained of."

We think the defendants were entitled to have Dr. McDaniel express his opinion to the jury as to what

caused plaintiff's nervousness. Turning to the record we find on his direct examination that Dr. McDaniel had already testified without objection that he examined plaintiff twice; first on July 13, 1928, and again on the day of the trial, and that the scars on plaintiff's abdomen shrunk quite a lot during the time between the two examinations. Dr. McDaniel then testified in detail as to plaintiff's nervous condition, as follows:

"Q. I will ask you to state from your examination if you found anything affecting her nervous system?

"A. Yes, the woman I think is slightly nervous.

"Q. Would you think these burns are responsible?

"A. No, sir; I laid it more to the goiter. She is under a nerve tension.

"Q. How does the goiter affect the nerve tension?

"A. It always does, through stimulation.

"Q. I will ask you to state whether or not in your opinion the burns could cause the nervousness.

"A. There is some nervousness as a result of a burn.

"Q. At this time?

"A. No.

"Q. You mean during the time the burns were active?

"A. Yes, sir.

"Q. I will ask you to state whether or not the plaintiff is suffering from any permanent injury or condition on account of the burns evidenced by the scars?

"A. The scar is the only thing I saw."

Dr. McDaniel certainly told the jury that he thought the burns were not responsible for plaintiff's nervous condition and that plaintiff was not suffering from any permanent injury on account of the burns, except as to the scars. On redirect examination the same ground was attempted to be covered.

Defendants, having had the benefit of substantially the same evidence as that offered, were not injured by the exclusion of what was in effect a repetition thereof. We see no error in this respect. Moreover, from the amount of the verdict, $1,000, we doubt if the jury allowed plaintiff anything for a permanent injury.

■■ Defendant urges error of the court in permitting Dr. R. C. Ellsworth, an expert witness for plaintiff, to testify out of the regular order and after the conclusion of defendants' case. It is, of course, the rule that the order of proof rests in the sound discretion of the trial court. It seems Dr. Ellsworth was engaged, as doctors usually are, when wanted as a witness. The defendants were aware, at the time the right to call Dr. Ellsworth out of regular order was granted, of the general nature of the claims of plaintiff. If Dr. Ellsworth testified to any particular fact that the defendants desired to contradict, the proper method was to ask the permission of the court to introduce further evidence on the point. We see no abuse in the exercise of the discretion of the trial court in the matter.

■ Defendants assign error of the court in permitting Dr. R. C. Ellsworth, a chiropractor, to testify over the objection of the defendants, as they are regular physicians and surgeons, and refusing to restrict such testimony. The doctor testified that he was a graduate of Jenner Medical College and the Northwestern College of Chiropractors and the Northwestern College of Physiotherapy of La Porte, Indiana, that he held a degree of doctor of medicine and practiced since 1891.

It is the general rule that in a malpractice action a physician or surgeon is entitled to have his treatment of his patient tested by the rules and principles of the school of medicine to which he belongs, and not by those of some other school, because a person professing to follow one system or school of medicine cannot be expected by his employer to practice any other, and if he performs a treatment with ordinary skill and care in accordance with his system, he is not answerable for bad results. However, the rule, which confines the inquiry as to a practitioner's skill and care to the rules and principles of the school of medicine to which he belongs, does not exclude the testimony of physicians of other schools or experts in other lines when such testimony bears on a point as to which the principles of the schools do or should concur, such as the dangers incident to the use of X-rays, or the existence of a condition that should be recognized by any physician: 21 R. C. L., p. 383, § 28; *Hilgedorf v. Bertschinger,* 132 Or. 641 (285 P. 819).

In the present case we have under consideration the use of an electric or diathermy machine used by defendants, who are regular physicians. Dr. R. C. Ellsworth, witness for plaintiff, testified in effect that he had a diathermy machine and used the same in the treatment of patients. In other words, the use of a diathermy machine, as we understand the record, is common to both regular physicians and chiropractors, or those who are graduates of physiotherapy. He testified, in effect, that it is not an approved method to leave the patient alone in the room with electrodes of a diathermy machine applied to her body. In wrestling with this question, where the order of physicians was reversed in the case of *Hilge-*

*dorf v. Bertschinger,* supra, we came to the conclusion that where physicians of different schools were practicing in a way common to the different schools or at work in a common field, then their treatment may be tested by a physician of either school. In the present case, however, the treatment to which the testimony or the test related was that of the operator, Miss Lynch, who was not a physician but in the employ of the physicians. We apprehend in such a case that one accustomed to the use of a diathermy machine, like Miss Lynch, could testify as to the proper manner of the operation thereof. There was no error in admitting the testimony of Dr. Ellsworth.

As to the defendants who are members of the partnership, their motion for a directed verdict was properly overruled. It is not the absolute duty of a physician to cure a patient or restore a conditioin of good health, nor is he an insurer of the efficacy of his services. In the treatment of a patient by whom he is employed, it is his undertaking to exercise that degree of care, skill, diligence and knowledge which is ordinarily possessed by the average of the members of his profession in good standing in similar localities: *Lehman v. Knott,* 100 Or. 59 (196 P. 476); *Emerson v. Lumbermen's Hospital Assn.,* 100 Or. 472 (198 P. 231); *Hamilton v. Kelsey,* 126 Or. 26 (268 P. 750). There was evidence tending to show that the operator, Miss Lynch, who was an employee of the firm, was negligent in applying the electrodes to plaintiff's body and then leaving the room with no one there to assist in the care of the patient, staying away for twenty-five or thirty minutes until the electrical current had burned the patient. According to general rules, partners in the practice of medicine are all

liable for an injury to a patient resulting from the lack of skill or the negligence, either in omission or commission, of any one of the partners, within the scope of their partnership business. A physician is responsible for an injury done to a patient through the want of proper skill and care of his assistant, apprentice, agent or employee: 48 C. J., 1136, §§ 139, 143. These defendants are responsible for the negligent act of Miss Lynch in failing to use proper care in the application of the diathermy machine under the doctrine of *respondeat superior.*

15, 16. It is urged that there was no expert testimony showing there was such negligence. As stated in *Ballance v. Dunnington,* 241 Mich. 383 (217 N. W. 329, 57 A. L. R. 262, 265):

"The standard of care, skill, and diligence required of an X-ray operator is not fixed by the ipse dixit of an expert, but by the care, skill, and diligence ordinarily possessed and exercised by others in the same line of practice and work in similar localities."

We think the same rule would apply in the operation of a diathermy machine. Dr. Albert Mount was an employee of the firm of doctors and under their direction and acting within the scope of his authority during the continuance of the agency. His statement characterizing the operation of the machine as a part of his employment was competent evidence against his employers: *Fredenthal v. Brown,* supra. There is no contention that the correct application of the diathermy machine was not a proper treatment.

The statement of Dr. Albert Mount, as plaintiff testified, that when she went to the doctor's office the next morning and Dr. Albert Mount examined her and said: "How in Hell did that girl ever burn you

like that!'' was not the statement of a layman but of an interested expert. In addition, plaintiff had the testimony of Dr. Ellsworth, who was not only a chiropractor but a regular graduate from a school of medicine. If plaintiff's evidence in this respect was true, and it is only denied in part or as to the degree of the burn, any expert, layman or novice, it would seem, could determine whether it was proper. There was sufficient testimony as to these defendants to take the case to the jury.

Defendants contend that plaintiff was guilty of contributory negligence. While the general rules, with regard to contributory negligence on the right to recover for personal injuries alleged to have arisen from negligence or malpractice of physicians and surgeons, apply the same as in ordinary actions for injuries, it is uniformly held that where negligence on the part of the patient or those acting for him proximately conduced or contributed to the injury complained of, there can be no recovery because of negligence on the part of a patient, and it is not a bar to recovery where it did not contribute proximately to the injury. The testimony does not warrant the court in finding, as a matter of law, that plaintiff was negligent in the matter of receiving treatment by the application of the diathermy machine. The jury did not so find. There is only slight, if any, testimony tending to show such contributory negligence. The question of contributory negligence was properly submitted to the jury.

At the appropriate time defendant, Dr. Albert Mount, moved the court for a directed verdict in his favor for the reason that he was an employee of the other defendants, Drs. Hugh, Guy and Frank Mount,

a partnership. There is no evidence tending to show that Dr. Albert Mount was a member of the firm. He was an employee of the partnership. We have already stated that the firm of physicians was responsible for the negligence of the operator of a diathermy machine, thereby inflicting injury upon plaintiff. It must be remembered that plaintiff's complaint is not for the negligent act or want of care and skill of Dr. Albert Mount, but of another employee of the firm over whom Dr. Albert Mount is not shown to have had any control. A servant or employee cannot be held liable for the acts of another employee of a common master, when the first employee in no way participates in the acts· of the second employee upon which liability is sought to be predicated: 1 Mechem on Agency, (2d Ed.) 1085, § 1463; 7 Labatt's Master & Servant (2d Ed.), p. 8003, § 2592; *Bilyeu v. Paisley,* 18 Or. 47, 54 (21 P. 934, 937, 4 L. R. A. 840); *Ellis v. Southern Ry. Co.,* 72 S. C. 465 (52 S. E. 248, 2 L. R. A. (N. S.) 378). Dr. Albert Mount, the superior servant of the other defendants, cannot be held liable for the acts of an inferior servant, even though he had authority from the common master to supervise and direct the act of Miss Lynch, unless he actually participated in the wrongful act complained of. In *Brown v. Lent,* 20 Vt. 529, the court said: ''A mere intermediate agent between the master and a direct agent cannot be held constructively responsible for the acts of the latter.'' This case was cited with approval in *Bileu v. Paisley,* supra. The judgment against defendant, Dr. Albert Mount, must be reversed and annulled.

■ It is contended by the other defendants that the court must reverse the entire case if Dr. Albert Mount is held to be not liable. Under the rule announced in

the case of *Lane v. Schilling,* 130 Or. 119 (279 P. 267, 65 A. L. R. 1042), the court, speaking through Mr. Justice McBride, said: "As the defendants are impleaded jointly, there cannot be separate verdicts in different amounts against each of them, so that what is error as to one defendant goes to the whole case." The rule does not apply in the present case. This act is one of tort and all the defendants who participated or are responsible for the act are liable severally.

Defendant requested the court to charge the jury in substance that if the evidence showed that the physical health or condition of plaintiff at the time of receiving the treatment was such as to produce any condition of which she complains without any negligence on the part of defendants, plaintiff could not recover for such condition. The court instructed the jury in effect that plaintiff could only recover for the pain, suffering and physical disability, if any, that she suffered by reason of the sole negligence of the defendants and without her negligence. This, taken in connection with the entire charge, did not permit the jury to find anything for plaintiff by reason of the condition produced by her physical health at the time of receiving the treatment. The case was properly submitted to the jury.

The judgment is reversed as to defendant, Dr. Albert Mount, and affirmed as to the other defendants.

Coshow, C. J., Brown and Belt, JJ., concur.