SVENDSEN v. FRANK McWILLIAMS, Inc.

(Supreme Court, Appellate Division, Second Department. June 20, 1913.)

1. MASTER AND SERVANT (§ 182*)—NEGLIGENCE OF SUPERINTENDENT—LIABILITY OF MASTER.

Labor Law (Consol. Laws 1909, c. 31), as amended in 1910 (Laws 1910, c. 352), makes a master liable for any negligent act of an employé acting as a superintendent, even in what would otherwise be considered a detail of the work.

[Ed. Note.—For other cases, see Master and Servant, Cent. Dig. §§ 371, 372; Dec. Dig. § 182.*]

2. EVIDENCE (§ 220*)—ADMISSIONS BY EMPLOYÉ—ADMISSIBILITY.

The silence of an employé acting as superintendent when charged by a coemployé sustaining a personal injury immediately after the accident with causing the accident cannot be considered as an implied admission of the truth of the charge, so as to bind the employer, though proof of an express declaration made by the employé at the time could be proved.

[Ed. Note.—For other cases, see Evidence, Cent. Dig. §§ 771–785; Dec. Dig. § 220.*]

3. EVIDENCE (§ 123*)—RES GESTÆ—DECLARATIONS—ADMISSIBILITY.

The declaration made by an employé sustaining a personal injury by a fall while a coemployé acting as superintendent held him after he caught him and to some extent broke the fall, charging the coemployé with conduct causing the accident, is admissible as a part of the res gestæ, and may be proved by the employé testifying in his action for the injuries.

[Ed. Note.—For other cases, see Evidence, Cent. Dig. §§ 351–368; Dec. Dig. § 123.*]

Jenks, P. J., dissenting.

Appeal from Trial Term, Richmond County.

Action by Ole Svendsen against Frank McWilliams, Incorporated. From a judgment for plaintiff, and from an order denying a new trial, defendant appeals. Affirmed.

Argued before JENKS, P. J., and BURR, CARR, RICH, and PUTNAM, JJ.

William M. Mullen, of New York City, for appellant.
James Burke, Jr., of Staten Island, for respondent.

CARR, J. This is an appeal from a judgment entered upon the verdict of a jury in the sum of $7,586.05 in an action brought to recover damages for a personal injury alleged to have occurred through the negligence of the defendant.

[1] The action is that of a servant against the master, and the negligence in question is alleged to have been that of one Stackhouse, who was a superintendent of the defendant. The nature of the alleged negligence is such that it would have fallen under the ordinary rule of a "detail" of the work, unless that rule has been abrogated or modified

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

by the amendment to the Labor Law in 1910 (Laws 1910, c. 352). We have held recently in Cashmore v. Peerless Motor Car Co., 154 App. Div. 814, 139 N. Y. Supp. 359, that the amendment of the Labor Law in 1910 had the effect of rendering the master liable for any negligent act of one who was a superintendent even in what would otherwise be considered a "detail" of the work. The plaintiff was at work in the shipyard of the defendant on Staten Island, and was engaged in unshipping a rudder from a canal boat which was undergoing repairs, and which was located on a dry dock. He was working with one Anderson under the direction and with the assistance of the superintendent Stackhouse. The blade had been removed from the rudder, and various efforts had been made to unship the rudder post. These efforts were not immediately successful.. The plaintiff was on the deck of the canal boat and Stackhouse was on the floor of the dry dock, some 19 feet below. According to the plaintiff's story, Stackhouse called out to him to knock off a cleat, which was secured to the rudder post. The plaintiff admitted that he knew that, if there was a cleat in question, it was nailed to the rudder post. He says that he put his left hand around the rudder post, and bent himself over the stern of the canal boat, in order to locate the spot where the cleat was to be found, and that, while he was so placed, Stackhouse with a steel bar pried at the bottom of the rudder post in such a manner as to turn the post around, thus throwing off the hold of the plaintiff, and causing him to fall to the floor of the dry dock. This act of Stackhouse is claimed to have been a negligent one, and to have imposed liability upon the defendant corporation. The case was a very close one as to the facts, there being practically but two witnesses to the exact occurrence, one the plaintiff and the other Stackhouse. The plaintiff admitted that, when he leaned over the stern of the canal boat and secured himself by holding onto the rudder post, he knew that Stackhouse had been prying at the rudder post with a steel bar. Stackhouse denied that he was prying at the rudder post at the very time the plaintiff fell. The whole question, therefore, was whether the plaintiff had simply lost his hold in the position of danger which he had assumed in order to locate the cleat, and thereby fell, or whether Stackhouse by active interposition caused the plaintiff to lose his hold and fall. Under these circumstances, an important question arises as to alleged error on the part of the trial court in the admission of certain portions of the testimony of the plaintiff.

The following appears on the direct examination of the plaintiff:

"Q. What happened after that, after you fell? A. Well, I asked Mr. Stackhouse how he could be so foolish, foolish and turn that rudder stock, when I was hanging on to it.

"Mr. Mullen: I move to strike it out as incompetent, irrelevant, and immaterial, and not in any way binding on this defendant, being a self-serving declaration in favor of the plaintiff, and also objected to on all those grounds, and ask to have it stricken out. (Motion denied. Exception to the defendant.) He didn't answer me at all. He had hold of me then."

Under ordinary rules of law Stackhouse had no authority to make any admissions, after the happening of the precise event, to fix liability upon his master. Of course, according to the record, he made no

admissions by any express declaration. It is insisted, however, that his alleged silence constituted an admission of the charge made by the plaintiff in his question to him.

[2] So we have here, not simply a case of the admissibility of a declaration of an agent made after the event, but of an implied admission, resting only upon silence or failure to reply to a question or accusation then and there made by the plaintiff. It is urged by the respondent that the question of the plaintiff, and the failure to reply upon the part of Stackhouse, formed part of the res gestæ, and that therefore the question and failure to reply became admissible in evidence. It is true that the question or accusation addressed to Stackhouse was put so nearly after the happening of the accident as to be practically contemporaneous with it, but at the same time the event was wholly completed, and there was no pending transaction material to the master's alleged liability. Stackhouse testified that he was "hard of hearing," and did not hear any question or accusation of this character from the plaintiff, and therefore made no reply to it. Let us assume, however, that he did hear it, but then he was under no obligation to answer it, and in fact he had no duty to make any answer simply to admit or impute liability on the part of his principal, for such was not within the scope of his agency under the circumstances of the case. From his failure to make a declaration which might under certain circumstances constitute an admission binding upon his master his silence cannot be considered to have the force and effect of an express admission by declaration, assuming that proof of an express declaration was competent. There are many circumstances under which proof of the silence of one who is accused of a fault may be shown against him, but the probative value of such proof is always open to question. Even in such cases the silence which may amount to an implied admission should be that of a party to the controversy which is involved in the action. I can find no precedent which goes to the extent of the respondent's contention as to an admission. On principle, it would seem to me that the contention as to an implied admission is unsound.

[3] The question of the admissibility of this evidence may rest, however, on another basis, even excluding the idea of an implied admission by Stackhouse. In submitting the case to the jury, the learned trial court did not instruct the jury that this evidence might go to prove an admission by implication. Was it admissible under any known rule of evidence? It appears from the proofs that, when the plaintiff fell, his body struck that of Stackhouse, who caught him and thus broke his fall to some extent. While Stackhouse was holding him, the plaintiff made the exclamatory question or declaration. The exclamation was so near in time as to be practically coincident or contemporaneous with the accident. It related to the cause of the happening and was relevant to the question in issue at the trial; i. e., the producing cause of plaintiff's fall. To this extent it was a part of the happening itself, of the "res gestæ," as the conventional phrase goes, a phrase described by Stephen in his notes to his "Digest of Evidence" as one of "convenient obscurity," but which nevertheless has,

in its larger aspects, a well-understood meaning in the law of evidence. What spontaneous declarations may be admissible as a part of the "res gestæ" has been the subject of much debate in reported decisions and by text-writers and legal essayists from the time of the memorable controversy between Lord Chief Justice Cockburn and Mr. Taylor. Thayer's Legal Essays, 207 et seq.; 3 Wigmore, § 1745 et seq. In this state, however, while the extent of such admissibility has been more restricted than in many other jurisdictions, yet the admissibility thereof has been well recognized within, certain standards. In People v. Del Vermo, 192 N. Y. 470, 483, 85 N. E. 690, 695, it was said by the court, through Bartlett, J.:

"Evidence is admissible of exclamatory statements declaratory of the circumstances of an injury when uttered by the injured person immediately after the injury; provided that such exclamations be spontaneously expressive of the injured person's observation of the effects of a startling occurrence, and the utterance is made within such limit of time as presumably to preclude fabrication."

As was pointed out by Cullen, J., in Patterson v. Hochster, 38 App. Div. 398, 56 N. Y. Supp. 467:

"There must be a principal fact established by other evidence before declarations can become competent as part of the res gestæ."

In the case of an accident the accident itself is not the principal fact, for, when the liability of a defendant is in question, then the principal fact is whether the defendant caused the accident. Patterson v. Hochster, ut supra. Here evidence, exclusive of the spontaneous exclamation, was given as to the alleged cause of the accident—that is, as to the "principal fact"—and proof of the spontaneous exclamation would appear to be admissible within the commonly applied exception to the "hearsay rule." Is this question of competency changed by the simple fact that in this case it is the exclaimer himself who testifies as to his spontaneous exclamation at the time of the accident? If the evidence as to the alleged spontaneous exclamation was given by some other witness, it would appear admissible unquestionably. I think the fact that this evidence comes from the exclaimer himself does not affect its competency, however much it may affect its probative force. No precedent on this point is cited to us, and, after some considerable search, I have found none myself. I appreciate the dangers which may attend the reception of such evidence under these circumstances, but they are simply consequential to the settled rule of the competency of evidence as to spontaneous exclamations which are said to form a part of the gestæ.

The questions of the defendant's negligence and the plaintiff's freedom from contributory negligence were submitted to the jury in a careful charge by the trial court, and the verdict cannot be said to have been against the weight of evidence.

The judgment and order should be affirmed, with costs.

RICH and PUTNAM, JJ., concur; BURR, J., concurs in result in a separate memorandum; JENKS, P. J., reads for reversal.

BURR, J. I concur in the result. After plaintiff had testified respecting the occurrence which resulted in his fall and consequent injury, he was asked this question: "What happened after that, after you fell?" The question was not improper, and no objection was made thereto. Plaintiff answered, "Well, I asked Mr. Stackhouse how he could be so foolish, foolish (sic), and turn that rudder stock, when I was hanging onto it." Mr. Stackhouse was defendant's foreman, and was acting as superintendent. Defendant's counsel thereupon moved to strike out the answer "as incompetent, irrelevant, and immaterial, and not in any way binding on this defendant, being a self-serving declaration in favor of the plaintiff." This motion was denied, and an exception was taken. I agree with the Presiding Justice that the evidence was improperly received, and that the motion to strike the same from the record should have been granted. But, in view of other testimony given in the case, it seems to me that the answer given could not have affected the result, and that, if it was error to deny the motion, such error was negligible in character. The succeeding question, apparently intended to elicit the reply of Mr. Stackhouse to this statement and in response to which plaintiff testified, "He didn't answer me at all," was not objected to. I therefore vote for affirmance.

JENKS, P. J. (dissenting). I do not agree with CARR, J., that the testimony of the plaintiff, "Well, I asked Mr. Stackhouse how he could be so foolish, foolish and turn that rudder stock, when I was hanging onto it. He didn't answer me at all. He had hold of me then"—was competent as "a part of the happening itself, of the res gestæ." The mere time of an utterance does not control. In Waldele v. N. Y. C. & H. R. R. R. Co., 95 N. Y. 274, 47 Am. Rep. 41, Earl, J., writing for the court, quotes Grover, J., in Ins. Co. v. Mosley, 8 Wall. 397, 19 L. Ed. 437, as follows:

"The question is, Did the proposed declaration accompany the act, or was it so connected therewith as to constitute a part of it? If so, it is a part of the res gestæ and competent; otherwise, not."

Irrespective of the time, the utterance was not so related to the act as to be within the apt expression of Gray, J., in Moore v. Meacham, 10 N. Y. 207, quoted by Earl, J., in Waldele's Case, supra:

"The general rule is that declarations, to become a part of the res gestæ, must accompany the act which they are supposed to characterize, and must so harmonize as to be obviously one transaction"

—but was rather described by the phrase of Comstock, J., in Luby v. H. R. R. R. Co., 17 N. Y. 131, also quoted by Earl, J., in Waldele's Case, in that it—

"was not made at the time of the act, so as to give it quality and character. The alleged wrong was complete, and the driver, when he made the statement, was only endeavoring to account for what he had done."

The essentials are well stated by Folger, J., in Tilson v. Terwilliger, 56 N. Y. 273, and approved in Waldele's Case, supra:

"To be a part of the res gestæ, they must be made at the time of the act done, which they are supposed to characterize; they must be calculated to

unfold the nature and quality of the facts which they are intended to explain; they must so harmonize with those facts as to form one transaction. * * * There must be a transaction of which they are considered a part; they must be concomitant with the principal act, and so connected with it as to be regarded as the result and consequence of coexisting motives."

In fine, my dissent rests upon the proposition that the words were not of a character so that they and the physical act of falling were articulated as one transaction so that the act was characterized by the words. I think that the error is not negligible, even if the plaintiff testified at another time on his examination that Mr. Stackhouse had turned the rudder stock when the plaintiff was hanging onto it, for the reason that this testimony is the basis for the contention that there was proof of an admission by the defendant that such was the fact.

I think there should be a new trial.