GRIFFITH v. AMERICAN BRIDGE CO. OF NEW YORK.

(Supreme Court, Appellate Division, Second Department.  July 31, 1914.)

1. RELEASE (§ 56*)—EVIDENCE—MENTAL CAPACITY.
Evidence of the mental condition of an injured servant at the time of the settlement because of the use of sedatives is material.
[Ed. Note.—For other cases, see Release, Cent. Dig. §§ 101–105; Dec. Dig. § 56.*]

2. RELEASE (§ 58*)—EVIDENCE.
The question whether a release executed by an injured servant was his voluntary act is for the jury.
[Ed. Note.—For other cases, see Release, Cent. Dig. §§ 109–114; Dec. Dig. § 58.*]

3. MASTER AND SERVANT (§ 182*)—INJURIES TO SERVANT—EMPLOYERS' LIABILITY ACT.
Under the Employers' Liability Act (Consol. Laws, c. 31, §§ 200–204) § 200, enlarged by Laws 1910, c. 352, the employer is liable for the negligence of one who exercised control and command over the injured employé, even if the injury occurred in a detail of the work.
[Ed. Note.—For other cases, see Master and Servant, Cent. Dig. §§ 371, 372; Dec. Dig. § 182.*]

4. APPEAL AND ERROR (§ 1151*)—DETERMINATION—REMITTITUR.
Where the verdict shows that improper argument influenced the jury, the appellate court will correct the error by reducing the verdict.
[Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. §§ 4498–4506; Dec. Dig. § 1151.*]

Appeal from Trial Term, Westchester County.

Action by Perry W. Griffith against the American Bridge Company of New York. From a judgment for plaintiff and orders denying new trial, defendant appeals. Judgment and orders reversed, and new

---

trial granted, unless plaintiff stipulate to reduce the verdict, in which case they are affirmed.

See, also, 157 App. Div. 264, 142 N. Y. Supp. 199.

Argued before JENKS, P. J., and BURR, CARR, STAPLETON, and PUTNAM, JJ.

Martin T. Manton, of Brooklyn, for appellant.

Sydney A. Syme, of Mt. Vernon, for respondent.

PER CURIAM. The testimony on this second trial materially changes the case as presented in 157 App. Div. 264, 142 N. Y. Supp. 199. The proof of the deadening effect of hypodermic injections of morphine is clear.

[1] Its influence upon plaintiff when he signed the so-called settlement agreement is directly opposed to that stated on the first trial. Plaintiff's experts testify that such injection tended to dull and stupify, and not to brighten, the patient; and in this opinion defendant's own physician now concurs, thus taking back his previous testimony that it would make plaintiff more capable of transacting business. The mental state in which an instrument is signed by one injured and under the influence of sedatives is naturally material. Labatt, Master and Servant, § 1933a.

[2] The circumstances of the so-called settlement, being now more fully brought out, do show an issue of fact, and an issue vital and essential to the defense. Was defendant's voluntary relief plan, as shown by a closely printed prospectus of 17 folios, to which the settlement expressly refers, made clear to plaintiff, and did he ever actually have it before him? The jury could properly note that the recital which the claim agent appended for the witnesses to sign was incorrect and misleading. As it appeared, the subscribing witnesses were made to attest that this settlement had been read over to plaintiff in their presence, and that plaintiff then said he knew it was a full settlement of his claim against defendant. Yet, by the claim agent's admission on the stand, plaintiff had made no such statement; it had not been so read over in the witnesses' presence, and plaintiff had not said he knew it was a full settlement of his claim. Furthermore, the claim agent also acknowledged that it was not till April 25th (30 days after the signing of the settlement) that the claim agent first told the plaintiff, or any one representing him, that the paper was a release or a paper which prevented him from bringing suit.

Upon review of the whole testimony, and after collating it with the first record, we think the issue of fact as to this settlement, now pleaded in bar, was peculiarly for the jury. Having regard to plaintiff's condition when he signed it, and the terms of the paper itself, we cannot on the present record say, against the verdict, that plaintiff had contracted away his right of action.

[3] As this accident was after the enlargement of the Employers' Liability Act by Laws of 1910, c. 352, § 200, the negligence of Mr. Barrett, who exercised control and command, bound the employer, even if the method of taking away the chocks and letting the cars come back without checking them by a car line could be regarded as a detail of

the work. Svendsen v. McWilliams, Incorporated, 157 App. Div. 474, 142 N. Y. Supp. 606. The court's charge fairly submitted to the jury the three questions of Mr. Barrett's superintendence, of his want of care in letting the cars run down this steep incline, and of plaintiff's contributory negligence.

The verdict of $32,396.50 was evidently by deducting $103.50, payments to plaintiff, from the flat sum of $32,500.

[4] When, in summing up to the jury, counsel alluded to the corporation's financial ability to pay, the court's direction, though promptly given, that the jury should dismiss this suggestion from their minds could not undo its effect. Where the verdict shows that the jury have been so influenced, we are called on to correct it by reducing their verdict. While plaintiff's injuries were painful and severe, and many of them lasting, a verdict of $20,000, under the precedents, is fully compensatory.

The judgment and orders, therefore, are reversed, and a new trial granted, costs to abide the event, unless within 20 days plaintiff stipulate to reduce his verdict to $20,000, in which event the judgment as so modified, and orders, will be affirmed, without costs of this appeal.

JENKS, P. J., votes for reversal and a new trial.