•GLADNEY, Judge.
This case presents an appeal by Willis Jack from a judgment rejecting his claim against the International Paper Company and Southern Kraft Paper Corporation for benefits alleged to be due him under the Workmen’s Compensation Act.
The District Court maintained an exception of misjoinder filed by Southern Kraft Paper Corporation and, there being no appeal therefrom, that defendant has passed out of the picture, leaving this suit strictly a contest between appellant and the International Paper Company.
Appellant alleges that while employed as a laborer at the paper mill of defendant located at Cullen, Louisiana, he received an injury January 1, 1949, which involved a strain of the muscles, ligaments and tendons of his back, requiring him to be away from his work nineteen (19) days. He returned to his job on January 20th and worked without interruption through March 29, 1949. On the latter date he says he received a second injury which aggravated that of January 1st, causing him to suffer an acute lumbosacral strain, and permanent damage to the lumbar vertebrae and spine, which injuries have rendered him totally and permanently disabled.
The action is defended on the ground plaintiff has not presented adequate proof *876 of any accident on March 29, 1949, and that disability attributable to either alleged injury has not been shown. Appellee concedes the occurrence of the accident of January 1st, and that plaintiff was disabled until January 20, 1949, but contends that after such date Willis Jack performed constantly until March 29th all functions and work attendant to his job. It is further asserted appellant has suffered no disability nor aggravation of injury from the accident of January 1, 1949.
In written reasons for judgment, the Judge a quo- concluded Willis Jack did not furnish sufficient evidence to show he had an accident on or about March 29, 1949. His opinion also expresses the view that if plaintiff is receiving any pain from his back, the evidence adduced indicates it is not in fact due to an accident. After judgment and pursuant to a motion therefor, the trial Court reopened the case to permit the taking of testimony of Dr. C. M. Baker. It was 'represented in plaintiff’s application that plaintiff was treated by. Dr. Baker a few days after March 29, 1949, and that at the time of the trial counsel for plaintiff was not aware of that fact. After this additional evidence was received and considered the court held the testimony of Dr. Baker was so uncertain as to dates of treatment that such testimony could not change the judgment .in favor of defendant.
It is proper, therefore, to determine: (1) If plaintiff, by a preponderance of the evidence has furnished sufficient proof to establish that he received an injury- on March 29, 1949, while engaged in the employment of the defendant, and (2) whether, vel non, there is sufficient evidence plaintiff is suffering disability resulting from an employment accident.
Plaintiff testified that prior to January 1, 1949, he had worked for the defendant for approximately three years; that on January 1, 1949, while moving some metal sheets, he received and reported to the first aid station of the paper company a strained back, which caused him to remain away from work approximately three weeks; that following his return to his job he worked constantly until March 29, 1949, when he received a second injury to his back; that this injury occurred when he was handling some pipe in the salvage yard; that when he was hurt he, M. C. Sikes and Johnnie Baulkmon were placing in piles six inch iron pipe, twelve feet in length; that plaintiff was handling one end of the pipe and the other two employees were handling the other end; that he complained of his back sprain immediately to Sikes and Baulkmon; and that the accident occurred two days prior to March 31, 1949, the day he, together with some six other workers, were laid off by the mill because of a reduction in working 'force. Jack admits he did not report this injury to the foreman or to the first aid station. On cross examination appellant testified that he drew unemployment compensation amounting to about $500 over a period from April to August, 1950, and that in order to secure this compensation he represented to the government that he was able to accept employment.
Appellant’s testimony is inconsistent with that of M. C. Sikes, in that Sikes testified the first time he heard of the -injury was while he and plaintiff were leaving the work that evening. It was then, he said, plaintiff told him that he had been hurt. Sikes’ testimony on the witness stand differed from his signed statement, wherein concerning the alleged injury to Willis Jack on March 29, 1949, he stated: “He did not mention or show any signs of hurting his back on March 29, 1949, and he did the same kind and the same amount of work on March 30, 1949.”
Johnnie Baulkmon testified that on March 29th, while stacking the pipe, plaintiff got •“tangled up over the other pipe when he went to pick up that, and it made him fall against the pipe, and the end of the stick hit on top of there, and he said: ‘I hurt my back’.” He said Jack worked on the rest of the day and two or three days thereafter before being laid off. In addition to Sikes and Baulkmon, appellant’s wife, Mandy Jack, testified plaintiff complained of his back after returning home on March 29, 1949, and since that date he has not been able to work.
*877 The defendant called in its behalf Moody Nichols, James Henson, W. R. Coyle, Frank Custer, John Winn and E. W. Brown. The testimony of Nichols, Henson, Coyle and Winn established these men during the entire day of March 29th were in the close vicinity of appellant when he says he was injured. They uniformly state appellant made no complaint of an injury. Custer and Brown gave evidence from company records as to the actual working periods of plaintiff.
Medical evidence by Dr. S. F. Martin and Dr. J. B. Benton, both of whom testified in favor of the defendant, was to the effect that their examinations disclosed no objective signs of an injury to plaintiff’s back. Both attributed any disability to pyorrhea, which they opine caused Jack to have lumbago. The examination of Dr. Martin was on April 13, 1950, and appears-to have ‘been a fairly comprehensive clinical and physical examination, accompanied by X-rays. Dr. J. B. Benton testified he examined Willis Jack in June, 1950 and April, 1951. His examination resulted in negative findings other than a suspicion of chronic malaria, and a finding of pyorrhea. He diagnosed appellant’s condition as that of lumbago from focal infection.
Other medical testimony adduced was that of Dr. D. F. Overdyke, Jr., an orthopedic specialist of Shreveport, Louisiana. His examination, clinical and physical, was made on March 18, 1950. There were no objective findings by Dr. Overdyke, but he reached this conclusion: “From the history as given by this patient, and from the findings on physical examination, it is my opinion that he suffered an acute lumbosacral strain on each of the two occasions on which his back became painful. Each followed particularly heavy lifting and in each incident he' had considerable back pain, which was inconveniencing and disabling but which was not so severe as one would expect with a more extensive type of injury to the low back. Evaluation at this late date is rather difficult, but it is my opinion after examining this man that the lum-bosacral strain suffered in March, 1949, has been aggravated and the symptoms pro- ■ longed by the tremendous size of this man and by the large protuberant abdomen which is present * * *
The testimony of the doctor contains evidence of two conclusions. The first is that Jack suffered an acute lumbo-sacral strain on each of the two occasions, and secondly, that because of the lumbo-sacral strain he experienced the two accidents. Courts often rely upon the existence of disability as indicating the occurrence of an accident. It is fitting, however, that such reasoning should be accompanied by an application of the ordinary rules of evidence. At the time Dr. Overdyke examined appellant approximately a year had elapsed. The history as given on that occasion was more or less a narration of past events. Such statements, of course, are not admissible -as evidence of the facts stated, but the general -rule is that a physician may testify thereto solely for the purpose of disclosing the basis for his opinion. Marler v. Texas and Pacific Railroad Company, 52 La.Ann. 727, 27 So. 176. The Supreme Court in considering the operation of the principles of the res gestae had this to say, in the Marler case, supra, 52 La.Ann. at page 736, 27 So. at page 179:
“The general rule of evidence is that testimony must be given on oath ‘by persons speaking to matters within their own knowledge, and liable to be tested by cross-examination. (Gillett Indirect Evidence, Section 224).
* * * * * *
“The admissibility of unsworn declarations in evidence, as part of the res gestae, does not rest upon the theory that there is a great probability that they may be true; for, though these declarations are frequently made under such circumstances as to entitle them to implicit confidence, yet they do not answer the requirements of the law, that testimony against a party shall be given under the test and sanction of a solemn oath, and that he should have had an opportunity of cross-examination. Waldele v. [New York Central] R. R. Co., 95 N.Y. 274. Were we to permit ourselves to be guided in this matter simply by the high character of the parties making the declarations, and of those testifying to the fact of such declarations, and to the sub *878 stance of the same, we would test the ‘admissibility’ of evidence by the credibility of witnesses, instead of by fixed rules, determinative not only of that particular, but of all other identical, cases.”
The Employers’ Compensation Liability Act, LSA-R.S. 23 :1021-1351, Section 1317 thereof admonishes the courts not to be bound by technical rules of evidence or procedure but findings of fact must be based upon competent evidence. The fundamental principles of evidence as set forth above are still sound and applicable. In cases arising under the act there may be a tendency to liberalize the exception to the hearsay rule relating to res gestae. Day v. Armour Fertilizer Works, 8 La.App. 720; Butler v. Washington-Youree Hotel Company, La.App., 160 So. 825.
We have considered carefully Dr. Overdyke’s testimony for the reason that it is the only medical evidence offered favorable to plaintiff. We are of the opinion that we cannot rely upon it for the purpose of inferring that the injury did occur, especially if we restrict ourselves to the rules of evidence enunciated above.
We do not find any manifest error in the judgment of the District Court, rejecting plaintiff’s demands as not being supported by sufficient evidence. Accordingly, it is our decision that the judgment appealed from should be affirmed at appellant’s cost.
McINNIS, J., is recused.